PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KINSEY CORY HERDER,

*Defendant-Appellant.*

No. 08-4420

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:07-cr-00423-CMH-1)

Argued: October 30, 2009

Decided: February 11, 2010

Before NIEMEYER, MOTZ, and DAVIS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Davis wrote the majority opinion, in which Judge Motz joined. Judge Niemeyer wrote a separate opinion concurring in part and dissenting in part.

## COUNSEL

**ARGUED**: Geremy C. Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. David Brian Goodhand, OFFICE OF THE

UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Richard H. McWilliams, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Jeanine Linehan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

DAVIS, Circuit Judge:

Kinsey Cory Herder ("Herder") appeals his conviction and sentence following a jury trial on one count of possession with the intent to distribute five grams or more of crack cocaine and one count of possession with the intent to distribute marijuana, both in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Herder to 41 months' imprisonment — a sentence at the bottom of the applicable Sentencing Guidelines range — as well as five years of supervised release, a $200 special assessment, and forfeiture of property and proceeds obtained as a result of the offenses of the conviction. On appeal, Herder alleges that (1) there is insufficient evidence to support his conviction; (2) the district court erred in declining to give his proposed jury instruction on possession; (3) his sentence is procedurally unreasonable; and, (4) the money found on his person at the time of his arrest should not have been forfeited. For the following reasons, we affirm the conviction and forfeiture, vacate Herder's sentence, and remand for resentencing and to correct a clerical error in the judgment.

I.

Around midnight on June 20, 2007, Fauquier County Sheriff's Deputy Paul Cable ("Deputy Cable") was patrolling a

commuter parking lot, which was used primarily by commuters who carpool during rush hour and was known to host drug activity after hours. Members of the Sheriff's Office and the Blue Ridge Narcotics Task Force had conducted undercover drug purchases in the lot throughout the prior year, the last arrest occurring in May 2007. Deputy Cable observed two vehicles, a Jeep Cherokee and a silver Buick, leaving the lot. He followed the Buick, which was occupied solely by Herder. According to Deputy Cable, Herder was driving "overcautiously," keeping under the speed limit and signaling well in advance of turns. Deputy Cable did not follow directly behind the Buick or attempt to pull it over. Herder pulled into the parking lot of a nearby convenience store and parked at the far end of the lot near pay phones instead of the available spots directly in front of the store. Deputy Cable parked his patrol car on the opposite side of the parking lot.

As Herder was getting out of the Buick, Deputy Cable asked him where he was coming from; Herder replied that he had been out that evening having dinner at Ruby Tuesday with a friend, Stephanie Umble. Hearing this, Deputy Cable became suspicious because he had just followed Herder from the commuter lot. In addition, the restaurant was directly across from the parking lot but a mile away from the commuter lot.

During his interaction with Herder, Deputy Cable came to believe that criminal activity had taken place because Herder came from an area of high narcotic activity, gave implausible responses, exhibited cautious behavior, and constantly received cell phone calls. Deputy Cable asked Herder whether there were any drugs in the car and Herder said that there were not. Notwithstanding Herder's response, Deputy Cable asked permission to allow a narcotics detection dog to scan the Buick. Herder acquiesced, saying that he had nothing to hide.

The K-9 unit was deployed to Herder's Buick and positively alerted to the presence of the odor of narcotics. Deputy

Cable then began a probable cause search. He found nothing in the console, glove box, front passenger area, or under the seats. He did find three containers disguised to look like household products which contained false bottoms concealing narcotics and coffee grounds. One container, made to look like Ajax Bleach, was on the back seat of the car in plain view and concealed a plastic bag containing smaller plastic bags of crack cocaine and a plastic bag of coffee grounds. Another container, made to look like Old Spice shaving cream, was found on the floor board behind the driver's seat and concealed three bags of marijuana and a plastic bag of coffee grounds. The final container, made to look like Cheetos cheese curls, was found inside a plastic shopping bag near the middle of the back seat of the car. This container concealed a large plastic bag containing smaller plastic bags of crack cocaine.

Deputy Cable seized a total of 21 bags of crack cocaine and three bags of marijuana from Herder's car. Also inside the car was a prescription pill bottle bearing the name Tiffany Stokes. The pills in the bottle were not consistent with the label. On Herder's person was $1223.00 in multiple denominations. Herder was thereafter arrested.

On October 18, 2007, a federal grand jury in the Eastern District of Virginia indicted Herder on one count of possession with the intent to distribute five grams or more of crack cocaine and one count of possession with intent to distribute marijuana, both in violation of Title 21 U.S.C. § 841(a)(1). Herder pleaded not guilty and went to trial.

During trial, the government called a police lieutenant with 18 years of experience as a drug expert. The expert testified that there was a recent rise in the use of false-bottom containers to conceal crack cocaine and marijuana. The expert also testified that persons engaging in illegal drug purchases used "folds," which are bills of money that are folded over. He then identified at least six "folds" depicted in a photograph of the

money recovered from Herder at the time of his arrest. This expert, along with Deputy Cable, testified that coffee grounds are used to prevent a dog from sniffing the presence of drugs. The convenience store where Herder was arrested was known for illegal drug activity where police have conducted undercover drug buys. The expert concluded that the denominations of money found on Herder, the use of the canisters and coffee grounds, as well as the individually packaged crack cocaine and marijuana were consistent with distribution.

The defense called two witnesses. First, Umble testified that she and Herder did, in fact, go to Ruby Tuesday on the night of his arrest. Umble stated that she lived a few miles away from the commuter lot and that she and Herder frequently met at the commuter lot, where she would leave her Jeep Cherokee and ride in Herder's car. Her car had been towed in the past and, to prevent a recurrence, she always parked in the commuter lot where her car would be safe. She testified that Herder's car was very messy but she did not see any drugs that night. She also testified that she did not leave any drugs in the car.

Second, Tiffany Stokes, Herder's fiancee, testified that the two of them owned a t-shirt business, together with a woman named Aida Hernandez. The three shared the Buick for business deliveries and, as a result, the car became littered with "junk." Shortly before the search, Herder had gone on one such delivery and collected payment. (There were no t-shirts in the car at the time of the search.) Stokes further testified that Herder had access to money, approximately $16,000, because she recently received money from a settlement following a car accident and she had given the money to Herder to deposit in his bank account. Stokes was on prescription medication at the time of the search. She did not leave any crack cocaine or marijuana in the car.

Counsel for Herder submitted a proposed jury instruction on the meaning of "possession," which the district court

refused. The final jury instruction discussed the difference between actual and constructive, as well as joint and sole, possession. The court defined constructive possession as follows: "The possession is called constructive possession when a person does not have the direct and physical control over the substances but can knowingly control it and intends to control it, sometimes through another person." J.A. 140. The instruction proposed by the defense and rejected by the court would have added the following two sentences: "Presence in a car from which the police recover contraband does not establish possession. In other words, the mere proximity of contraband to the occupant is insufficient to establish constructive possession." J.A. 18.

During deliberations, the jury sent out the following note: "Does possession mean knowing possession? Can the drugs be in the car and not be possession?" J.A. 151. The parties agreed that the first question should be answered affirmatively. Defense counsel again offered the proposed instruction and again, the district court refused. Shortly thereafter, the jury found Herder guilty on both counts.

The original presentence report prepared by the probation officer erroneously determined that Herder was found in possession of nine grams of cocaine (powder) but it was later amended to reflect Herder's possession of 3.8 grams of crack cocaine (the amount determined at trial) and 7.3 grams of marijuana. The conversion yielded the equivalent of 50.54 kilograms of marijuana for sentencing.[1] With an offense level of 20 and five criminal history points, Herder was placed in criminal history category III. Herder's guideline range was therefore 41 to 51 months of imprisonment. Despite counsel's arguments that the court should depart or grant a variance

---

[1]Using the conversion ratio of 1 gram cocaine base = 13.3 kilograms marijuana prescribed by the application notes to the Sentencing Guidelines and U.S.S.G. § 2D1.1(a)(3), (c)(15) (2007), 3.8 grams of cocaine base converts to 50.54 kilograms of marijuana.

from the applicable guideline range because of the disparity between powder and crack cocaine, the court sentenced Herder to 41 months, the low end of the applicable guideline range. After hearing argument from counsel, the court also ordered the forfeiture of the money found on Herder's person at the time of his arrest.

Herder now appeals, challenging his conviction, sentence, and the order of forfeiture.

## II.

## A.

We review sufficiency of the evidence claims in the light most favorable to the government, deciding whether there is substantial evidence to support the conviction. *Glasser v. United States*, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). If there is substantial evidence to support the guilty verdict, then we must sustain the verdict. *Glasser*, 315 U.S. at 80. Because the evidence must be viewed in the light most favorable to the government, we assume that the jury resolved all contradictions in the testimony in favor of the government. *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006) (en banc).

Herder argues that the evidence at trial was insufficient to establish that he knowingly possessed the drugs found in the Buick. A conviction of possession with the intent to distribute may be based on actual or constructive possession. *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992), *cert. denied*, 506 U.S. 926 (1992). A person may have constructive possession of contraband if he has ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed. *United States v. Arm-*

*strong*, 187 F.3d 392, 395 (4th Cir. 1999). Proof of constructive possession requires proof the defendant had knowledge of the presence of the contraband, *United States v. Bell*, 954 F.2d 232, 235 (4th Cir. 1992), *overruled on other grounds by United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996), but "[c]onstructive possession may be established by either circumstantial or direct evidence." *United States v. Nelson*, 6 F.3d 1049, 1053 (4th Cir. 1993). Either way, a fact finder may properly consider the totality of the circumstances surrounding the defendant's arrest and his alleged possession. *Bell*, 954 F.2d at 235.

Herder analogizes this case to *United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992), and *United States v. Daley*, 107 F. App'x 334, 339 (4th Cir. 2004), in each of which we held that there was insufficient evidence to sustain a conviction based on a theory of constructive possession. Herder's reliance on those cases is unavailing.

In *Blue*, we held that the evidence was insufficient to establish constructive possession of a gun where a police officer saw the defendant sitting in the passenger seat of a vehicle dip his shoulder as the officer approached. 957 F.2d at 108. The proximity of the defendant to the gun established accessibility only, not dominion and control. *Id*. Moreover, there was no physical evidence, such as fingerprints, or witness testimony that the defendant had been seen with the gun. *Id*. Applying like reasoning in *Daley*, we found insufficient evidence for a possession conviction where a police officer witnessed the defendant make a "tugging or furtive movement" while sitting in the passenger seat of a car, under which the officer found a revolver and one kilogram of crack cocaine. 107 F. App'x at 339.

The instant case plainly differs from *Blue* and *Daley*. First, unlike the passengers in those cases, Herder was the driver and sole occupant of the car. While the record is unclear whether Herder owns the car, the facts that (1) he was the

driver and sole occupant at the time the drugs were found and (2) the canisters concealing the drugs were within his reach are indicative of a high degree of dominion and control over the drugs. *See Armstrong*, 187 F.3d at 395 (finding sufficient evidence for possession where the defendant was the owner and sole occupant of the car in which the contraband was found, a gun was under a floormat on the driver's side, and the drugs were located in a compartment to the left of the steering wheel).

Furthermore, the evidence shows that Herder engaged in highly suspicious activity while being observed by Deputy Cable; that evidence plainly provides circumstantial proof of Herder's knowledge of the narcotics discovered in the vehicle he was operating. Deputy Cable and Lieutenant Andersen both testified that the commuter lot in which Deputy Cable first noticed Herder's car was well-known for illicit drug activity, especially at night. Lieutenant Andersen testified that he had recently directed an undercover drug purchase in that commuter lot around midnight, which is about the same time that Herder was observed leaving the lot. From this evidence, the jury could well have inferred that Deputy Cable probably witnessed Herder engaging in a drug transaction. With this inference, the jury could have reasonably concluded that Herder had knowledge that drugs were concealed, but within his reach, in the car in which he was the sole occupant. Moreover, the jury could have believed Deputy Cable's testimony regarding Herder's cautious driving, suspicious answers, and nervous demeanor.

The money seized from Herder was consistent with the types of "folds" used in drug distribution. The jury reasonably could have believed Lieutenant Andersen's testimony that he was familiar with the types of folds used by Herder because it is similar to the folds he had seen and, in fact, used, in undercover drug purchases. The jury could have concluded that the folds of money found on Herder were used in drug

distribution and, therefore, Herder had knowledge of the concealed drugs.[2]

In sum, for the above reasons, the direct and circumstantial evidence presented by the government at trial was more than ample to support the jury's verdict.

### B.

"Whether jury instructions were properly given is a question of law." *United States v. Morrison*, 991 F.2d 112, 116 (4th Cir. 1993). We review the district court's refusal to give specific instructions for abuse of discretion. *United States v. Brooks*, 928 F.2d 1403, 1408 (4th Cir. 1991). We review the entire jury charge to determine whether the jury was properly instructed on the elements of the offenses and the accused's defenses. *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991). The key inquiry is "whether, taken as a whole, the instruction fairly states the controlling law." *United States v. Cobb*, 905 F.2d 784, 788-89 (4th Cir. 1990); *accord Henderson v. Kibe*, 431 U.S. 145, 153 (1977). A district court's refusal to give a proposed instruction constitutes reversible error if the instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995).

Here, the district court refused Herder's proposed instruction on possession. During the charge conference, the court

---

[2]Finally, even the defense evidence provided corroboration to the jury that the government's evidence demonstrated Herder's knowing dominion and control over the drugs in the vehicle. Although Herder shared the car with two other people, one of those people, Herder's fiancee, Tiffany Stokes, testified affirmatively that the drugs did not belong to her. Stephanie Umble, the only other person shown to have had access to the vehicle that night, also testified that the drugs were not hers.

told the parties that he intended to tell the jury "how they may find proof of knowledge" and that "precise knowledge of a controlled substance need not be proved" with regard to possession. J.A. 125-26. Herder's counsel advised the court that there was no need for a joint possession or actual possession instruction. The court stated that he would give a complete definition. ("If I'm defining it, it seems to me I ought to go about defining it." J.A. 128.). Herder's counsel then requested that the court add two sentences to the possession instruction and the court refused:

> Defense Counsel: We've also added Fourth Circuit law, the last paragraph, which says presence in a car from which the police recovered contraband does not establish possession. In other words, mere proximity of contraband to an occupant is insufficient to establish constructive possession. That's just black letter law from *United States v. Blue*.

> The Court: But it's not the definition of possession. You're free to argue to that, but that's not something that I'm going to tell the jury.

> Defense Counsel: Well, it's a legal principle, Your Honor.

> The Court: That has to do with whether or not there's sufficient evidence to convict somebody.

> Defense Counsel: True. Just being close to something isn't enough. That's all we're asking the jury to understand that being close to something isn't enough to show possession.

> The Court: That's right, but that's not the definition of possession.

> Defense Counsel: I understand.

The Court: That's a question of whether or not there's sufficient evidence to convict somebody. You can argue that to the jury.

J.A. 128-29. The court's final jury instruction on possession was as follows:

Now, the term possess means to exercise control or authority over something in a given time. This possession may be actual or constructive, joint or sole. The possession is considered to be actual possession when a person knowingly has direct physical control or authority over the controlled substances. The possession is called constructive possession when a person does not have the direct and physical control over the substances but can knowingly control it and intends to control it, sometimes through another person. The possession may be knowingly exercised by one person exclusively, which is sole possession, or the possession may be exercised jointly when it is shared by two or more persons.

J.A. 140-41.

During deliberations the jurors asked, "Does possession mean knowing possession? Can the drugs be in the car and not be possessed?" J.A. 151. The parties agreed that the court should inform the jury that possession must be knowing. The court, however, refused Herder's repeated request to instruct the jury regarding proximity. The court stated that giving that instruction would be akin to answering specific fact questions or directing a verdict.

The district court did not abuse its discretion in declining to give Herder's proposed instruction. To be sure, the proposed instruction was a correct statement of the law; however, it was substantially covered by the court's charge to the jury,

and the district court's failure to give the requested instruction did not impair Herder's ability to conduct his defense.

The only Fourth Circuit case on point is our unpublished opinion in *United States v. Rice*, 36 Fed. App'x 509, 510 (4th Cir. 2002) (unpublished). There, we affirmed a district court's refusal to add a "mere proximity" instruction. We noted that the court's instructions properly defined possession as actual possession or power and intent to exercise control. *Id.* (*citing United States v. Jackson*, 124 F.3d 607, 610-11 (4th Cir. 1997)). We also held that "[t]he instruction does not leave room for the confusion that [the defendant] complains of because the language specifically requires more than mere proximity to the firearm." *Id.*

Similarly, three other circuits have sustained a jury charge that did not include a "mere proximity" instruction because the instructions actually given to the jury plainly required proof of knowledge and control. In *United States v. Rojas*, 537 F.2d 216, 219-20 (5th Cir. 1976), for example, the Fifth Circuit affirmed a district court's refusal to give "mere proximity" instructions because the given instructions, which defined possession as exercising control or dominion over an object, sufficed to preclude a conviction on the basis of mere proximity to the drugs at issue. In *United States v. Vasquez*, 82 F.3d 574, 577 (2d Cir. 1996), the Second Circuit faced a similar case and reached the same conclusion as the Fifth Circuit. The Second Circuit stated that the given charge "clearly required the jury to find that the defendant had the intent to exercise dominion or control over the firearm and that possession could not be established by accident or mistake." *Id.* The Seventh Circuit has also rejected a challenge to a district court's refusal to give a "mere proximity" instruction because the district court's possession instruction required knowledge and intent. *See United States v. Hendricks*, 319 F.3d 993, 1006 (7th Cir. 2003); *United States v. Rice*, 995 F.2d 719, 725 (7th Cir. 1993); *United States v. Saunders*, 973 F.2d 1354, 1361 (7th Cir. 1992).

Here, the district court defined possession as exercising control or authority over something at a given time. The court discussed constructive possession as occurring when a person has "no direct and physical control over a substance but can knowingly control it and intends to control it, sometimes through another person." As the district court here observed, the "mere proximity" instruction Herder requested constitutes a perfectly valid defense argument. *See United States v. Viserto*, 596 F.2d 531, 539 (2d Cir. 1979), *cert. denied*, 444 U.S. 841 (1979). Nevertheless, it is clear on this record that under the court's instructions, the jury could not have convicted Herder unless it believed that Herder had knowledge of the drugs, could exercise knowing control over them, or knowingly intended to exercise such control. In other words, in the face of the instructions it was provided, the jury could not have convicted Herder had the government's proof shown no more than that Herder was merely present in the car where the drugs were found. Thus, the district court did not abuse its discretion in denying defendant's request for a "mere proximity" jury instruction.

## C.

We review sentences for "unreasonableness." *United States v. Booker*, 543 U.S. 220, 260-63 (2005); *United States v. Johnson*, 445 F.3d 339, 341 (4th Cir. 2006). "A sentence after *Booker* may be unreasonable for both procedural and substantive reasons." *United States v. Montes-Pineda*, 445 F.3d 375, 378 (4th Cir. 2006), *cert. denied*, 551 U.S. 1163 (2007). *Booker* made clear that the abuse-of-discretion standard of review applies to appellate review of sentencing decisions. *Gall v. United States*, 552 U.S. 38, 46 (2007).

In *Rita v. United States*, 551 U.S. 338, 346 (2006), the Supreme Court held that appellate courts could infer that a sentence within the applicable advisory Guidelines range is presumptively reasonable. We have employed this principle. *See United States v. Johnson*, 445 F.3d 339, 341 (4th Cir.

2006). On the other hand, the Supreme Court forbids *sentencing* courts to presume that a sentence within the applicable Guidelines range is reasonable. *Nelson v. United States*, 129 S. Ct. 890, 892 (2009).

Section 841 of Title 21 of the Code, the statute criminalizing the manufacture and distribution of crack cocaine, and the relevant Sentencing Guidelines, subject crack cocaine traffickers to the same sentence as another dealing in 100 times more powder cocaine. This notable disparity has led the Supreme Court to hold that the offense levels established in the crack cocaine Guidelines, like the Guidelines generally, are not binding. *Kimbrough v. United States*, 552 U.S. 85, 85 (2007). Indeed, a district court may categorically reject the ratio set forth by the Guidelines. *Spears v. United States*, 129 S. Ct. 840, 842 (2009). A within-Guidelines sentence for crack cocaine distribution may be "greater than necessary" to serve the objectives of sentencing. *Kimbrough*, 128 S. Ct. at 564.

An appellate court "lack[s] the authority to review a sentencing court's denial of a downward departure unless the court failed to understand its authority to do so." *United States v. Brewer*, 520 F.3d 367, 371 (4th Cir. 2008). And when the sentencing court is silent regarding its reason for refusing a departure or a variance sentence, the appellate court is precluded from inferring that the sentencing court believed that it lacked the authority to do so. *United States v. Bailey*, 975 F.2d 1028, 1035 (4th Cir. 1992). Here, the district court was not "silent;" we believe, while the matter is not entirely free of all doubt, it evinced its belief of a lack of authority to sentence outside of the crack cocaine guideline. This was error.

The Supreme Court has specifically reversed the Eight Circuit's affirmance of a within-Guidelines sentence in a crack cocaine case. *See Moore v. United States*, 129 S. Ct. 4, 4 (2008) (per curiam). In *Moore*, the Court held that the sentencing court did not believe it had discretion to depart from

the Guidelines under *Kimbrough* when it stated that "Congress is the one who looks at the Guidelines and decides whether or not they should be put in - in force . . . It isn't the judges." *Id.*

In the case before us, Herder argues that, as in *Moore*, the district court failed to understand its authority to sentence below the applicable crack guideline range. Herder points specifically to the following exchange during the sentencing hearing:

> Defense Counsel: If I also may be briefly heard, Your Honor, on the sentence. I believe, and I don't mean to indicate that I didn't say this before, but this is the type of case that *Kimbrough v. United States* envisions where there's a grave disparity between the crack guideline and the powder guidelines.
>
> Had Mr. Herder been seized with 3.8 grams of powder, he would only be looking at 6 to 12 months, Your Honor. I would ask the Court to reassess —
>
> The Court: Well, we've already taken that into consideration. The sentencing guidelines have modified the discrepancy in the crack and powder cocaine. This was calculated under the new guidelines, was it not?
>
> Defense Counsel: Yes, Your Honor. We would still have a 67 to 1 ratio between crack and powder.
>
> The Court: I understand that. Congress has decided that that's an appropriate ratio to establish.

J.A. 210.

We agree that this colloquy — the district court's conclusory word on the matter— shows that the court failed to rec-

ognize its discretion to sentence outside the crack cocaine Guidelines.[3] First, it was the Sentencing Commission, and not Congress, that established the ratio for crack and powder cocaine. Second, the court expressed its view that a within-Guidelines sentence is appropriate even though the Supreme Court specifically forbids sentencing courts from presuming that such sentences are reasonable. *See Nelson*, 129 S. Ct. at 892. The district court refused to consider a variation from the Guidelines in light of the 67:1 ratio between crack and powder cocaine at Herder's offense level, presuming that a within-Guidelines sentence was reasonable because "Congress has decided that that's an appropriate ratio to establish." J.A. 210. Third, the court sentenced Herder to 41 months of incarceration, the low end of the Guidelines recommended by the presentence report, *before* the above exchange took place. The court imposed sentence before it could hear arguments on the important factors to consider pursuant to 18 U.S.C. § 3553(a). At the very least, the district court's statements are vague enough that we are constrained to conclude that it did not understand that it had discretion to depart from the Guide-

---

[3]The dissent simply ignores that whatever counsel's prior oral and written arguments, and whatever the prior brief statements of the district court, ultimately the court based its decision not to deviate from the Guidelines on the erroneous conclusion that "Congress ha[d] decided" the appropriate ratio. Moreover, while it is true that counsel for Herder filed a memorandum in aid of sentencing with the district court, Rule 32 specifically recites that "[*a]t sentencing*, the court . . . *must* allow the parties' attorneys to comment on the probation officer's determinations *and other matters relating to an appropriate sentence*." Fed. R. Crim. P. 32(i)(1)(C)(emphases added). As the Supreme Court has reminded us:

> [G]iven the scope of the issues that may be considered at a sentencing hearing, a judge will normally be well-advised to withhold her final judgment until after the parties have had a full opportunity to present their evidence and their arguments. Sentencing is "a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds." *United States v. Vega-Santiago*, 519 F.3d 1, 4 (C.A.1 2008) (en banc).

*Irizarry v. U.S.*, 128 S. Ct. 2198, 2203 (2008).

lines. Herder's sentence is therefore procedurally unreasonable.[4] Accordingly, we shall vacate the sentence and remand for resentencing.

D.

A district court's findings of fact are reviewed for clear error while its conclusions of law are reviewed de novo. *See United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001). Accordingly, a trial court's findings of fact regarding the forfeitability of the property are reviewed for clear error. A district court may order the forfeiture of (1) proceeds obtained as a result of the crime for which a defendant was convicted or (2) property used or intended to be used to commit or to facilitate the commission of the crime for which a defendant was convicted. 21 U.S.C. § 853(a). The burden is on the government to establish, by a preponderance of the evidence, that the property at issue is subject to forfeiture. *United States v. Cherry*, 330 F.3d 658, 669-70 (4th Cir. 2003); *United States v. Tanner*, 61 F.3d 231, 234-35 (4th Cir. 1995).

We have never adequately articulated the proper standard for the requisite nexus between property and crime under § 853. We now expressly adopt the "substantial connection" standard from case law interpreting nearly identical civil forfeiture language in 21 U.S.C. § 881 (2006).[5] *United States v. Smith*, 966 F.2d 1045, 1055 (6th Cir. 1992); *cf. United States*

---

[4]We note, as the parties have agreed, that the Judgment Order incorrectly listed the offense of conviction as the greater offense of Possession with the Intent to Distribute 5 Grams or More of Cocaine Base. This matter shall be corrected upon the remand.

[5]We believe that, in forfeiture cases, the "substantial connection" standard will provide more guidance to the district courts than the nebulous "requisite nexus" mentioned in the Federal Rules. *See* Fed. R. Crim. P. 32.2(b)(1)(A) ("If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense."); *see also United States v. Juluke*, 426 F.3d 323, 326-27 (5th Cir. 2005).

*v. Heldeman*, 402 F.3d 220, 222 (1st Cir. 2005) (declining to apply the "substantial connection" standard to the § 853 criminal forfeiture question because "[w]hatever the exact degree of connection required by the criminal forfeiture statute, . . . the evidence provided to the district court in this case amply supported the forfeiture").

Under the "substantial connection" test, where the government's theory is that the property was used to commit, or to facilitate the commission of, the offense of conviction, the government must establish that there was a substantial connection between the property to be forfeited and the offense. *Id*. Substantial connection may be established by showing that use of the property made "the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990) (internal quotes omitted); *see United States v. Santoro*, 866 F.2d 1538, 1542 (4th Cir. 1989) (holding that a single sale would have been sufficient to fulfill the substantial connection test in forfeiture of the property in which sale occurred). The government may rely on circumstantial evidence to establish forfeitability. *See United States v. One Parcel. . . 7715 Betsy Bruce Lane*, 906 F.2d 110, 113 (4th Cir. 1990) (holding that circumstantial evidence that the house was used to possess cocaine with intent to distribute is sufficient, even if only trace amounts are found).

Here, Herder challenges the district court's forfeiture order based on his possession convictions. The district court ordered forfeiture of the $1,223 currency seized from Herder at the time of the arrest based on its finding that the money constituted "proceeds of drug trafficking." J.A. 212. In so ordering, the district court found that the circumstances surrounding the seizure of the $1,223 were sufficient to establish a substantial connection between the money and the Herder's drug trafficking offense.

The $1,223 was seized from Herder at the time of his arrest and was folded and held in a manner indicative of its use in

a drug transaction. At the time of the seizure, Herder was in possession of a quantity of drugs for which he was subsequently convicted of possessing with the intent to distribute. Under the circumstances, the district court did not "clearly err" in finding that Herder intended to use the $1,223 to commit, or to facilitate the commission, of the offenses for which he was convicted.

## III.

For the reasons stated herein, we affirm Herder's conviction and the order of forfeiture. We vacate the sentence and remand for resentencing. We intimate no view as to what sentence the district court might find to be appropriate. Rather, by our order, we simply provide the court with a clarification of its authority to impose a sentence other than one within the crack cocaine guideline.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

I am pleased to concur in the portion of the majority's opinion affirming Herder's conviction and the forfeiture order in this case. I respectfully dissent, however, from the majority's finding that the sentence is procedurally unreasonable. The finding rests on conclusions that: (1) the district court "did not understand that it had discretion to depart from the guidelines," *ante* at 17-18; (2) when the district court "expressed its view that a within-guidelines sentence is appropriate," it somehow improperly relied on the presumption of reasonableness prohibited by *Nelson v. United States*, 129 S. Ct. 890, 892 (2009), *ante* at 17; and (3) the district court "imposed sentence before it could hear arguments on the important factors to consider pursuant to 18 U.S.C. § 3553(a)," *ante* at 17.

I disagree with each of these conclusions, and the record, I submit, provides no support for them.

The presentence report, as amended, provided that Herder was subject to an offense level of 20 and a criminal history category of III, resulting in a recommended Guidelines sentencing range of 41 to 51 months' imprisonment. These calculations took into account the Sentencing Guidelines' Amendment 706, which reduced the offense level for crack cocaine offenses by two levels.

Prior to sentencing, Herder submitted a thorough sentencing memorandum to the district court in which he devoted over six pages to arguing that even the amended crack/powder ratio in the Sentencing Guidelines did not appropriately serve the sentencing factors in 18 U.S.C. § 3553(a). He argued that while Amendment 706 "significantly softened the disparity between powder and crack," reducing it from a 100 to 1 ratio to a 67 to 1 ratio in this case, the amendment still left large ratios that "punish crack at a disproportionate and unwarranted level as compared to powder." He asserted that his own circumstances presented a "textbook example of this disparate treatment" and that the punishment recommended by the Sentencing Guidelines was "considerably greater than that called for with an equivalent amount of powder cocaine."

At the sentencing hearing, counsel for Herder repeated the argument, again "not[ing] that Your Honor's free to disregard the guideline range in assessing the 3553(a) factors."

After also hearing from the government, the district court then concluded:

> Well, I find the guideline factors in this case to be properly assessed at a range of 41 to 51 months, but because of the financial condition of the defendant, the imposition of any fine or cost is not warranted.

> I find that the low end of the guideline range here
> would meet the requirements of the 3553 factors.

The court then sentenced Herder to 41 months' imprisonment, the low end of the recommended range.

After sentencing, counsel for Herder again raised the crack/powder issue: "I don't mean to indicate that I didn't say this before, but this is the type of case that *Kimbrough v. United States* envisions where there's a grave disparity between the crack guideline and the powder guidelines." The court responded that it had "already taken that into consideration." Finally, when counsel for Herder again complained that the Guidelines had established a 67 to 1 ratio between crack and powder, the court replied, "I understand that. Congress has decided that that's an appropriate ratio to establish."

Nothing in this scenario suggests that the court did not understand its discretion to impose a sentence below the Guidelines. Indeed, the entire dialogue between the court and Herder presumed that the court had the discretion to depart downward. Nor is there anything to indicate that the court rested its sentencing decision on a presumption of reasonableness. To the contrary, it found that the § 3553(a) factors were served by a sentence at the low end of the Guidelines range. Finally, *before* sentencing, the court considered Herder's fully stated arguments, advanced on paper and orally, that the court rely on the § 3553(a) factors to depart from the Guidelines. The district court simply did not accept the argument. Nowhere did the court ever suggest that it did not have the authority to depart or that it was resting on a presumption of reasonableness. Moreover, the court's response to Herder's complaint about the 67 to 1 ratio was that that ratio was one that Congress had picked.

Thus, every basis that the majority opinion advances for its finding of procedural unreasonableness is belied by the record. Indeed, because the record affirmatively indicates a

contrary finding, a district court might well conclude that it is our opinion that is procedurally unreasonable.