EDUARDO C. ROBRENO, J.
Following a jury trial, Defendant Wheeler K. Neff was convicted of conspiracy to violate the Racketeer Influenced and Corrupt Organization ("RICO") Act, conspiracy to commit fraud, and mail and wire fraud. The Government now seeks to forfeit Neff's alleged proceeds of the RICO conspiracy and Neff's residence, which contains his home office, pursuant to 18 U.S.C. § 1963(a). Neff contests both the Government's proposed forfeiture money judgment amount and the forfeiture of his residence. The Court held a hearing pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(B), and is now ready to issue a preliminary order of forfeiture. This memorandum constitutes the Court's findings of fact and conclusions of law in support of the preliminary order of forfeiture.
*345 For the reasons that follow, the Court finds that the Government is entitled to the forfeiture of (1) $323,856.75 as proceeds of the RICO conspiracy pursuant to 18 U.S.C. § 1963(a)(3) ; and (2) Defendant Neff's right, title and interest in 12.11% of his Wilmington, Delaware, residence as property that afforded a source of influence over the RICO enterprise pursuant to 18 U.S.C. § 1963(a)(2)(D).
I. PROCEDURAL HISTORY
On March 31, 2016, Neff was indicted by a grand jury on two counts of conspiracy to violate the RICO Act in violation of 18 U.S.C. § 1962(d), one count of conspiracy to commit fraud, in violation of 18 U.S.C. § 371, two counts of mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, and three counts of wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. ECF No. 1. Neff's co-defendants, Charles M. Hallinan and Randall P. Ginger, were indicted on the same charges as well as nine counts of money laundering. See id. A second grand jury was later empaneled and returned a superseding indictment on December 1, 2016. ECF No. 87.
Defendant Hallinan and Defendant Neff filed a motion to dismiss the charges against them on February 8, 2017, ECF No. 149, which the Court denied on August 15, 2017, ECF No. 203. A jury trial commenced on September 26, 2017, against Defendant Hallinan and Defendant Neff.[1]
On November 27, 2017, the jury returned a guilty verdict against both Defendants on all counts of the superseding indictment. On December 4, 2017, on the basis of Defendant Neff's conviction, the Government filed a motion for a preliminary order of forfeiture and proposed findings of fact and conclusions of law in support of the proposed order. ECF No. 326. On December 9, 2017, Defendant Neff filed a response to the Government's motion for a preliminary order of forfeiture, including Defendant Neff's alternate proposed findings of fact and conclusions of law. ECF No. 329.
On December 12, 2017, the Court ordered the Government to file a reply in further support of its motion for a preliminary order of forfeiture and proposed findings of fact and conclusions of law, see ECF No. 338, which the Government filed on January 10, 2018, ECF No. 342. The Court also permitted Defendant Neff to file a sur-reply to the Government's motion, see ECF No. 338, which Defendant Neff filed on January 31, 2018, ECF No. 357. On March 23, 2018, the Court held a hearing on the Government's motion for a preliminary order of forfeiture. ECF No. 384.
The Court has reviewed the relevant trial testimony and exhibits, the parties' proposed findings of fact and conclusions of law, the parties' memoranda in support of their proposed findings of fact and conclusions of law and the responses and replies thereto, the arguments made at the forfeiture hearing held on March 23, 2018, and the exhibits introduced at that hearing. Upon this record, as well as credibility findings, the Court makes its findings of fact and conclusions of law.
II. FINDINGS OF FACT
1. The Government properly signaled its intent to seek a forfeiture judgment as part of the punishment in this case through its filing of three notices of forfeiture, as well as a Bill of Particulars. See ECF No. 87 at 47-54; ECF No. 158; ECF No. 202; ECF No. 253.
2. The evidence at trial proved that Defendant Neff's legal services were instrumental to the success of the RICO
*346 enterprises charged in Counts One and Two of the Superseding Indictment. Although Defendant Neff was neither an owner nor a manager of the RICO enterprises, he participated in the conduct of both enterprises by advising Adrian Rubin and Defendant Hallinan regarding how to create the sham partnerships with the tribes, and then preparing fraudulent contracts and other documents to support the RICO enterprises. Defendant Neff also wrote fraudulent contracts and documents for the Hallinan Payday Lending Companies to create the sham ownership of Apex 1 Processing, Inc. by Defendant Ginger. See Gov't Exs. 1-8, 9-10, 31-50, 61-76, 81-85, 87-93, 99-101, 186, 209-10, 213-16, 219, 220-23, 226-28, 230, 307-09, 317-355, 400, 447-471, 541-582, 668, 671, 721, 750, 889, 892, 893, 899, 927, 931, 933, 936, 943, 948, 951.
3. Defendant Neff was paid $331,158 from the Hallinan Payday Lending Companies during the course of the RICO conspiracy charged in Count One. See Gov't Exs. 307-08, 2167-71, 2180-82, 2214. Some of these payments related to Defendant Neff's participation in the conduct of the RICO conspiracy charged in Count One. See Gov't Exs. 307-08, 2167-71, 2180-82, 2214. However, some of these payments related to other legal services that Defendant Neff provided for the Hallinan Payday Lending Companies that were not related to the RICO conspiracy charged in Count One. See Declaration of Adrienne W. Neff ("Adrienne Neff Decl."), ECF No. 330.
4. Beginning on June 1, 2013, the billing invoices Defendant Neff sent to the Hallinan Payday Lending Companies included separate amounts due for Defendant Neff's legal work performed for the Hallinan Capital Corporation, for "Business to Business Loan Operations," and for "Payday Loan Operations." See ECF No. 331 at 6-11.
5. The legal work Defendant Neff performed for the Hallinan Payday Lending Companies in the categories of "Hallinan Capital Corporation" and "Payday Loan Operations" related to the RICO conspiracy charged in Count One. See id. However, the legal work Defendant Neff performed for the Hallinan Payday Lending Companies in the category of "Business to Business Loan Operations" did not relate to the RICO conspiracy charged in Count One. See id.
6. Defendant Neff's billing invoices establish that $7,301.25 of the amount that the Hallinan Payday Lending Companies paid Defendant Neff for legal work performed during the course of the RICO conspiracy charged in Count One was in the category of Business to Business Loan Operations, and therefore did not relate to the RICO conspiracy charged in Count One. See id. These invoices establish that, of the $331,158 that the Hallinan Payday Lending Companies paid Defendant Neff during the course of the RICO conspiracy charged in Count One, $7,301.25 did not relate to the RICO conspiracy. See id.
7. Defendant Neff was paid $32,176 from the Rubin Payday Lending Companies during the course of the RICO conspiracy charged in Count Two. See Gov't Exs. 2172-73, 2175-77, 2215. All of these payments related to Defendant Neff's participation in the conduct of the RICO conspiracy charged in Count Two.
8. The Government seeks forfeiture of 118 School Road, Wilmington, Delaware ("the Wilmington Property"), which is a real property owned by Defendant Neff and his wife.[2]
*347 9. Defendant Neff served as the registered agent of several of the Hallinan Payday Lending Companies, and he listed the Wilmington Property as the address for the registered agent. See Gov't Exs. 210, 213-14, 216, 219-21, 223, 226-27, 228, 230, 2213, 2260.
10. In addition, while serving as an attorney to the Hallinan Payday Lending Companies, Defendant Neff performed legal work in support of the RICO enterprise charged in Count One from his home office within the Wilmington Property, which was his place of business at the time. See Gov't Ex. 2160. For example, Defendant Neff sent correspondence and emails on behalf of the Hallinan Payday Lending Companies from his home office within the Wilmington Property. See Gov't Exs. 186, 186, 209, 215, 222, 307-09, 321, 333, 335, 400, 668, 671, 721, 750, 889, 892-93, 898-99, 927, 931, 933, 936, 943, 948, 951, 2213.
11. Defendant Neff's home office comprises 12.11% of the total square footage of the Wilmington Property.
III. CONCLUSIONS OF LAW
1. Pursuant to Federal Rule of Criminal Procedure 32.2(a), a court cannot enter a judgment of forfeiture in a criminal proceeding unless "the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a).
2. Here, the Government provided adequate notice to Defendant Neff of the Government's intention to seek forfeiture in this case for the convictions of Counts One and Two, including a money judgment, directly forfeitable property, and substitute assets, through the notices of forfeiture and the forfeiture Bills of Particular.
3. It is the Government's burden to establish that specific property is subject to forfeiture. In the Third Circuit, the Government must prove the relationship between the property interest to be forfeited and the RICO violations beyond a reasonable doubt.[3] United States v. Pelullo, 14 F.3d 881, 906 (3d Cir. 1994) ("[W]e conclude that Congress intended the burden of proof in a 1963(a) proceeding to be beyond a reasonable doubt."); see also United States v. Voigt, 89 F.3d 1050, 1081-83 (3d Cir. 1996).
4. Following a trial, the Government may rely on evidence already in the record for a determination of forfeiture. Fed. R. Crim. P. 32.2(b)(1)(B). The parties may offer additional evidence as well. Fed. R. Crim. P. 32.2(b)(1)(B). In connection with a forfeiture proceeding pursuant to 18 U.S.C. § 1963, a court "may receive and consider ... evidence and information that would be inadmissible under the Federal Rules of Evidence." 18 U.S.C. § 1963(d)(3).
Forfeiture Pursuant to 18 U.S.C. § 1963(a)(3)
5. Title 18 of the United States Code, Section 1963(a), provides that "[w]hoever violates any provision of [ 18 U.S.C. § ] 1962... shall forfeit to the United States, irrespective of any provision of State law ... any property constituting, or derived *348 from, any proceeds which the person obtained, directly or indirectly, from ... unlawful debt collection in violation of [ 18 U.S.C. § ] 1962." 18 U.S.C. § 1963(a)(3).
6. The RICO forfeiture statute is mandatory, broad, and sweeping in its scope. See Alexander v. United States, 509 U.S. 544, 562-63, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993).
7. The Third Circuit has not addressed whether the term "proceeds" in 18 U.S.C. § 1963(a)(3) means gross proceeds (i.e., all revenue received), gross profits (i.e., all revenue received minus direct costs), or net profits (i.e., all revenue received minus all costs). In this case, the Government and Defendant Neff have stipulated that the definition of "proceeds" with respect to 18 U.S.C. § 1963(a)(3) is "gross proceeds."
8. Defendant Neff obtained proceeds from unlawful debt collection in violation of 18 U.S.C. § 1962 through his compensation for legal services he provided to the RICO enterprises charged in Counts One and Two.
9. Defendant Neff's legal services, including advising Rubin and Defendant Hallinan regarding the operation of the RICO enterprises, and preparing fraudulent contracts and other documents in support of the RICO enterprises, were instrumental to the success of both enterprises.
10. The Government has established, beyond a reasonable doubt, that Defendant Neff received $331,158 from the Hallinan Payday Lending Corporation during the course of the conspiracy. Defendant Neff has established that $7,301.25 of that amount was for legal services that did not relate to the RICO conduct charged in Count One. Therefore, the Court will subtract that amount from the gross proceeds Defendant Neff received in return for his legal work in support of the RICO enterprise charged in Count One.
11. The amount of the gross proceeds Defendant Neff received as a result of his conviction for the RICO conspiracy charged in Count One is $323,856.75.
12. The Government has established, beyond a reasonable doubt, that all of the legal services Defendant Neff performed for the Rubin Payday Lending Companies related to the RICO conspiracy charged in Count One.
13. The amount of the gross proceeds Defendant Neff received as a result of his conviction for the RICO conspiracy charged in Count Two is $32,176.
14. The total amount of the gross proceeds Defendant Neff received as result of his conviction for RICO conspiracy charged in Counts One and Two is $356,032.75.
15. A defendant must forfeit the amount of illicit proceeds as determined by the Court, even if the defendant no longer possesses the funds. See United States v. Edwards, 303 F.3d 606, 643-44 (5th Cir. 2002) ; United States v. Corrado, 227 F.3d 543, 558 (6th Cir. 2000) ; United States v. Robilotto, 828 F.2d 940, 949 (2d Cir. 1987).
16. Title 18 of the United States Code, Section 1963(m) provides that, if any of the property subject to forfeiture under 18 U.S.C. § 1963(a), as a result of any act or omission of the defendant (1) "cannot be located upon the exercise of due diligence" or (2) "has been commingled with other property which cannot be divided without difficulty," the court shall order forfeiture of any other property of the defendant up to the value of any property subject to forfeiture. 18 U.S.C. § 1963(m).
17. The forfeiture of substitute assets is appropriate and necessary where a defendant has made it difficult to identify the location of hidden proceeds by commingling the criminal proceeds with untainted funds. See *349 Voigt, 89 F.3d at 1087-88. The Government need only demonstrate due diligence in discovering the defendant's actions to commingle or otherwise make it difficult to trace the proceeds of his crime. See United States v. Seher, 562 F.3d 1344, 1373 (11th Cir. 2009).
18. Based upon the Government's extensive financial investigation over several years, which demonstrated the excessive commingling of Defendant Neff's funds, the Government has proven due diligence in tracing the proceeds of the Hallinan Payday Lending Companies' RICO enterprise, and identifying directly forfeitable property pursuant to 18 U.S.C. § 1963(m), and accordingly, an order for substitute assets is appropriate.
19. The Government may seek an order for substitute assets in a preliminary order of forfeiture along with an order for money judgment and directly forfeitable property. See Fed. R. Crim. P. 32.2(b)(2).
20. Defendant Neff's interest in the property located at Parcel Number 075210000000500, Walnut Creek, Glen Elder, Kansas, is forfeitable pursuant to 18 U.S.C. § 1963(m) as a substitute asset to be credited against Defendant Neff's forfeiture money judgment.
Forfeiture Pursuant to 18 U.S.C. § 1963(a)(2)(D)
21. Title 18 of the United States Code, Section 1963(a), provides that "[w]hoever violates any provision of [ 18 U.S.C. § ] 1962... shall forfeit to the United States, irrespective of any provision of State law ... any property ... affording a source of influence over [ ] any enterprise which the person has established operated, controlled, conducted, or participated in the contact of, in violation of [ 18 U.S.C. § ] 1962." 18 U.S.C. § 1963(a)(2)(D).
22. In order to forfeit property pursuant to 18 U.S.C. § 1963(a)(2)(D), the Government must establish that the property had a "substantial connection" to Defendant Neff's violation of 18 U.S.C. § 1962. Pelullo, 14 F.3d at 901 (explaining that "[s]ection 1963(a) essentially provides that any person who violates § 1962 shall forfeit to the United States any of his property if the property had a substantial connection to his violation of § 1962").
23. Property has a substantial connection to a RICO violation when the property is "used to further the affairs of the enterprise," United States v. Angiulo, 897 F.2d 1169, 1214 (1st Cir. 1990), or where "use of the property made 'the prohibited conduct less difficult or more or less free from obstruction or hindrance,' " United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010) (quoting United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990) ).
24. Defendant Neff's use of the Wilmington Property as the address for the registered agent for the Hallinan Payday Lending Companies did not create a substantial connection between the Wilmington Property and Defendant Neff's violation of 18 U.S.C. § 1962. Defendant Neff could have used any address as the address for the registered agent, and his use of the Wilmington Property address, in particular, neither "further[ed] the affairs of the enterprise," Angiulo, 897 F.2d at 1214, nor "made 'the prohibited conduct less difficult or more or less free from obstruction or hindrance,' " Herder, 594 F.3d at 364 (quoting Schifferli, 895 F.2d at 990 ). See, e.g., United States v. Nicolo, 597 F.Supp.2d 342, 357 (W.D.N.Y. Feb. 17, 2009) (finding that defendant's use of his properties as a mailing address for his business "merely 'incidental or fortuitous' " in relation to the defendant's money laundering offenses, and therefore insufficient to warrant forfeiture (quoting United States v. Parcel of Property, 337 F.3d 225, 233 (2d Cir. 2003) );
*350 United States v. King, 231 F.Supp.3d 872, 1010-11 (W.D. Okla. 2017) (finding that defendant's sporadic use of his house to "take care of some [illegal bookkeeping]-related business" was too tangential to support forfeiture of the house).
25. However, Defendant Neff's use of his home office in the Wilmington Property to conduct legal work did create a substantial connection between the Wilmington Property and Defendant Neff's violation of 18 U.S.C. § 1962. Defendant Neff's use of his home office furthered the affairs of the RICO enterprise charged in Count One. Without a business office, Defendant Neff could not have conducted his legal practice. As the place of business for the attorney for the Hallinan Payday Lending Companies, who participated in the conduct of the RICO enterprise, Defendant Neff's home office in the Wilmington Property facilitated the RICO enterprise, furthered its affairs, and was instrumental to its success.
26. As property which was used to facilitate the Hallinan Payday Lending Companies' payday lending activities, the Wilmington Property afforded a source of influence over the RICO enterprise. Therefore, the Wilmington Property is subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(2)(D).
27. Under the "rule of proportionality," property affording a source of influence over a RICO enterprise pursuant to 18 U.S.C. § 1963(a)(2)(D) is only subject to forfeiture "to the extent [it is] tainted by the racketeering activity." Angiulo, 897 F.2d at 1212.
28. There is no evidence in the record that Defendant Neff performed any legal services for either of the two RICO enterprises in any part of the Wilmington Property aside from his home office. Therefore, the only portion of the Wilmington Property that is "tainted" by the racketeering activity and therefore subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(2)(D), id., is Defendant Neff's home office.
29. As Defendant Neff's home office comprises 12.11% of the total square footage of the Wilmington Property, the Government is entitled to forfeit Defendant Neff's right, title, and interest in 12.11% of the square footage of the Wilmington Property pursuant to 18 U.S.C. § 1963(a)(2)(D).
IV. CONCLUSION
For the reasons stated above, the Government is entitled to the forfeiture of (1) $323,856.75 as proceeds of the RICO conspiracy pursuant to 18 U.S.C. § 1963(a)(3) ; and (2) Defendant Neff's right, title and interest in 12.11% of his Wilmington, Delaware, residence as property that afforded a source of influence over the RICO enterprise pursuant to 18 U.S.C. § 1963(a)(2)(D).
An appropriate order follows.
JUDGMENT AND PRELIMINARY ORDER OF FORFEITURE
AND NOW , this 29th day of March, 2018 , upon consideration of the Government's Motion for a Preliminary Order of Forfeiture and Proposed Findings of Fact and Conclusions of Law (ECF No. 326), and the responses and replies thereto, and following a hearing held with counsel for the parties on March 23, 2018, for the reasons set forth in the Court's findings of fact and conclusions of law dated March 29, 2018, it is hereby ORDERED that the Government's Motion for a Preliminary Order of Forfeiture (ECF No. 326) is GRANTED in part and DENIED in part as follows:
1. As a result of the offenses charged in Counts One and Two of the Superseding Indictment, as to which the jury found Defendant Neff guilty, and pursuant to *351 18 U.S.C. § 1963(a), Defendant Neff shall forfeit to the United States (1) any interest in, or property or contractual right of any kind affording a source of influence over any enterprise which Defendant Neff has established, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962, see 18 U.S.C. § 1963(a)(2)(D) ; and (2) any property constituting, or derived from, any proceeds which Defendant Neff obtained, directly or indirectly, from unlawful debt collection, in violation of 18 U.S.C. § 1962, see 18 U.S.C. § 1963(a)(3).
2. Based on the record, for the reasons set forth in the Court's findings of fact and conclusions of law dated March 29, 2018, the Court finds, beyond a reasonable doubt, that the value of any property constituting, or derived from, any proceeds which Defendant Neff obtained, directly or indirectly, from unlawful debt collection, in violation of 18 U.S.C. § 1962, as a result of the offenses charged in Counts One and Two of the Superseding Indictment, is $356,032.75.
3. This sum is subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(3).
4. Therefore, a money judgment in the amount of $356,032.75 is hereby entered and ordered against Defendant Neff.
5. The Court finds, by a preponderance of the evidence, that the Government has established that, as a result of Defendant Neff's acts and omissions, the proceeds that Defendant Neff obtained from the commission of the offenses charged in Counts One and Two of the Superseding Indictment, that is, $356,032.75 in proceeds, cannot be located upon the exercise of due diligence, and have been commingled with other property that cannot be subdivided without difficulty.
6. Therefore, pursuant to 18 U.S.C. § 1963(m), the Government is entitled to forfeit substitute assets equal to the value of the proceeds that Defendant Neff obtained as a result of his commission of the offense charged in Counts One and Two of the Superseding Indictment, that is, $356,032.75.
7. The United States has identified the following specific substitute assets in which Defendant Neff has a right, title or interest which the Government seeks to forfeit pursuant to 18 U.S.C. § 1963(m) and Federal Rule of Criminal Procedure 32.2(b)(2)(A) :
a. All right, title and interest in real property located at assessor's parcel number 075210000000500, Walnut Creek, Glen Elder, Kansas, with all improvements, appurtenances and attachments thereon.
8. Pursuant to 18 U.S.C. § 1963(m), Defendant Neff's right, title and interest in the property identified in Paragraph 7(a) of this Order is hereby forfeited to the United States.
9. Upon entry of this Order, the United States is authorized to seize the property identified in Paragraph 7(a) of this Order.
10. The net proceeds from the forfeiture and sale of the property identified in Paragraph 7(a) of this Order shall be applied against the $356,032.75 forfeiture money judgment ordered in Paragraph 4 of this Order, in partial satisfaction thereof.
11. Based on the record and for the reasons set forth in the Court's findings of fact and conclusions of law dated March 29, 2018, the Court finds, beyond a reasonable doubt, that the following specific property was property affording a source of influence over the RICO enterprise which Defendant Neff has established, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962, as charged in Counts One and Two of the Superseding Indictment:
*352 a. Real property located at 118 School Road, Wilmington, Delaware, with all improvements, appurtenances, and attachments thereon.
12. Further, based on the record and for the reasons set forth in the Court's findings of fact and conclusions of law dated March 29, 2018, the Court finds, beyond a reasonable doubt, that 12.11% of the square footage of the property specified in Paragraph 11(a) of this Order is subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(2)(D). See United States v. Angiulo, 897 F.2d 1169, 1212 (1st Cir. 1990) (explaining that property "affording a source of influence [is] only subject to forfeiture to the extent [it is] tainted by the racketeering activity").
13. Therefore, 12.11% of Defendant Neff's right, title, and interest in the property identified in Paragraph 11(a) of this Order is hereby forfeited to the United States.
14. Upon entry of this Order, the United States is authorized to conduct any discovery necessary to identify, locate or dispose of property subject to forfeiture, in accordance with Federal Rule of Criminal Procedure 32.2(b)(3).
15. Pursuant to 18 U.S.C. § 1963(l), the United States shall, upon entry of this Order, post on an official internet government forfeiture site (http://www.forfeiture.gov) for at least thirty consecutive days, notice of the Government's intent to dispose of the property identified above in Paragraphs 7(a) and 13 of this Order in such manner as the Attorney General may direct. This notice shall state that any person, other than Defendant Neff, having or claiming a legal interest in any of the property subject to this Order must file a petition with the Court within sixty days after the first day of publication on the official internet government forfeiture site. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in each of the forfeited properties and any additional facts supporting the petitioner's claim, and the relief sought.
16. The United States shall also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property identified above in Paragraphs 7(a) and 13 of this Order, or to his or her attorney, if he or she is represented, as a substitute for published notice as to those persons so notified. If direct written notice is provided, any person having or claiming a legal interest in any of the property subject to this Order must file a petition with the Court within thirty (30) days after the notice is received.
17. Any person, other than Defendant Neff, asserting a legal interest in the property identified above in Paragraphs 7(a) and 13 of this Order may, within the time periods described above for notice by publication and for direct written notice, petition the court for a hearing, without a jury, to adjudicate the validity of his or her alleged interest in the subject property, and for an amendment of the order of forfeiture, pursuant to 18 U.S.C. § 1963(l).
18. After disposition of any motion filed under Federal Rule of Criminal Procedure 32.2(c)(1)(A) and before a hearing on a petition filed under 18 U.S.C. § 1963(l), discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(B).
19. The parties shall file any objections to this Judgment and Preliminary Order of Forfeiture by April 9, 2018.
*353 20. If the parties do not file any objections, this Judgment and Preliminary Order of Forfeiture shall become final as to Defendant Neff at sentencing pursuant to Federal Rule of Criminal Procedure 32.2(b)(4), and shall be made part of the sentence and included in the judgment and commitment order.
21. The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(C).
22. The Clerk of Court shall deliver a copy of this Judgment and Preliminary Order of Forfeiture to the Federal Bureau of Investigation, the United States Marshal, and counsel for the parties.
AND IT IS SO ORDERED.

Defendant Ginger did not appear for trial. He is reportedly currently living in Canada.

The Court will adjudicate any issues relating to Defendant Neff's wife's ownership interest in the Wilmington Property in an ancillary proceeding pursuant to Federal Rule of Criminal Procedure 32.2(c) in the event that she files a timely petition pursuant to Rule 32.2(c)(1).

During the forfeiture hearing, the Government argued that it should be required to prove the relationship between the property interest and the RICO violations by a preponderance of the evidence, as opposed to beyond a reasonable doubt. Although other circuits have embraced the preponderance standard, the Third Circuit has held that the appropriate standard of proof for RICO forfeiture pursuant to 18 U.S.C. § 1963 is beyond a reasonable doubt. See United States v. Pelullo, 14 F.3d 881, 906 (3d Cir. 1994).