**UNITED STATES of America**

**v.**

**Jian–Yun DONG, a/k/a John Dong, GenPhar Inc., and Vaxima, Inc.**

**CRIMINAL NO.: 2:11–CR–511–BHH**

United States District Court, D. South Carolina, Charleston Division.

Signed April 25, 2017

Filed 04/27/2017

Eric J. Klumb, Nathan Stuart Williams, United States Attorney's Office, Charleston, SC, Carrie Fisher Sherard, U.S. Attorneys Office, Greenville, SC, Stanley D. Ragsdale, U.S. Attorneys Office, Columbia, SC, for Plaintiff.

## ORDER

Bruce Howe Hendricks, United States District Judge

This matter is before the Court on two motions for Preliminary Orders of Forfei-

ture ("POFs"), (ECF Nos. 593; 793), filed by the United States of America ("the Government") in the instant criminal action, the Government's amended motion to hold the forfeiture of substitute assets in abeyance (ECF No. 656), and Defendant Jian–Yun Dong's motion to stay the forfeiture order pending appeal (ECF No. 811). In light of the evidentiary record, and for the reasons set forth below, the Court GRANTS IN PART the Government's first POF motion, (ECF No. 593), insofar as it pertains to the imposition of a forfeiture money judgment and the forfeiture of the GenPhar Property. The Court GRANTS IN PART the second POF motion, (ECF No. 793), and restrains the SunTrust Accounts to potentially be forfeited as substitute assets at a later date. The Court further GRANTS the Government's amended motion to hold the forfeiture of substitute assets in abeyance, (ECF No. 656). Finally, the Court DENIES Dong's motion to stay the forfeiture order, (ECF No. 811).

## I. BACKGROUND

On April 16, 2013, a multi-count Third Superseding Indictment ("Third SSI") was filed charging Defendants Jian–Yun Dong, GenPhar, Inc., and Vaxima, Inc. ("Defendants") with, *inter alia*, Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); Theft of Government Property, in violation of 18 U.S.C. § 641 (Count 7); and Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts 13–34). (ECF No. 281.)

The Government's prosecution was based upon evidence that Defendants misappropriated federal grant funds earmarked for research, by diverting such funds into non-allowable expenditures primarily for construction of a research facility (the "GenPhar building") on the "GenPhar Property",[1] and for certain lobbying costs and other costs. A jury trial and subsequent bench trial resulted in guilty verdicts against Defendants on all of the previously referenced charges. (ECF Nos. 489–90; 556–58.)

Pursuant to Fed. R. Crim. P. 32.2(a), the Third SSI contains a notice of forfeiture alleging that upon conviction, certain listed property, or equivalent substitute assets, would be subject to forfeiture to the United States. (ECF No. 281 at 28–37.) Pursuant to Rule 32.2(b)(1)(A), the forfeiture notice also includes a request for a forfeiture money judgment ("money judgment") against Defendants, representing proceeds of the offenses of conviction. Although the amount of the proposed money judgment in the Third SSI is $3,622,849.14, (ECF 281 at 29), the Government has since reduced that amount to $3,211,599.83. (ECF No. 593 at 3.)

In November 2012, pursuant to 21 U.S.C. § 853(e)(1)(A), Judge Houck issued an order (the "First Restraining Order") restraining various properties listed in the Third SSI. (ECF No. 255.) He ordered the restraint of, *inter alia*, all real property in which Defendants may have an interest, up to the value of $3,622,849.14 (including both directly forfeitable property (i.e., "proceeds") and substitute assets). (*Id.* at 14–15.) Judge Houck also required that the property owners maintain the present condition of any real property subject to the order, and make timely mortgage and tax payments. (*Id.* at 15.) In issuing the restraining order, Judge Houck rejected De-

---

1. The GenPhar Property is located at 1200 Innovation Way, Mount Pleasant, South Carolina. It is also referenced as "South Morgan Point Road" in the first restraining order (ECF 255 at 9) and Third SSI (ECF 281 at 29). However, because of the primary build-ing's location on the property, the intersecting street, "Innovation Way", is now the designated street address for the property. *See* First Restraining Order (ECF No. 255 at 3, n.1); and Government's first POF Motion (ECF No. 593-7 at 4, n.4.)

fendants' contentions that the GenPhar Property was worth more than $1,560,000. (*Id.* at 6.)

Relevant here, the Government has filed two motions for Preliminary Orders of Forfeiture, (ECF Nos. 593; 793), seeking the forfeiture of real and personal property in which Defendants currently or formerly had an interest. The Government also seeks imposition of a money judgment against Defendants in the amount of $3,211,599.83, representing the gross proceeds of the offenses of conviction (and equaling the amount of loss as currently determined by United States Probation). The Government seeks to forfeit the GenPhar Property under 18 U.S.C. § 981(a)(1)(C), as directly forfeitable property constituting or derived from proceeds traceable to the counts of conviction (i.e., as "proceeds"). In the alternative, the Government seeks forfeiture of the GenPhar Property under 21 U.S.C. § 853(p)(2), as a substitute asset.[2] (ECF 593 at 3–5.)

The Government maintains that it has met the statutory predicates for forfeiture of this property as a substitute asset. The Government argues, *inter alia*, that Defendants have engaged in prohibited acts or omissions under 21 U.S.C. § 853(p)(1) resulting in substantial liens on the GenPhar Property, rendering it effectively unavailable for purposes of forfeiture; and, that Defendants commingled grant funds and non-grant funds, then routed such commingled funds through multiple accounts, thereby making tracing of the grant funds into other specific property time-consuming, resource-intensive, inordinately expensive, and, ultimately, likely futile.

Because of uncertainties in the value of the GenPhar Property, the Government also moves to hold the forfeiture of the remaining property in abeyance, until such time as the Government is in a position to know the amount of net forfeiture proceeds,[3] if any, realized from the forfeiture and sale of the property. (ECF No. 656). The Government points to the widely conflicting appraisals submitted in this case,[4] and the substantial liens currently associated with the property.[5] Based upon these factors, the Government argues that if the GenPhar Property is forfeited, there is substantial uncertainty as to how much, if anything, may ultimately be realized from its sale. The Government notes that if the net forfeiture proceeds were sufficient to satisfy the money judgment, there would be no need to forfeit other assets. The

---

**2.** *See United States v. Smith,* 770 F.3d 628, 642 (7th Cir. 2014) (the government may argue that property is directly forfeitable or, in the alternative, that it is a substitute asset, and the court may enter an order forfeiting the property under both theories).

**3.** The "net forfeiture proceeds" would generally be the amount of funds available to the United States from the sale of the GenPhar Property, after deducting the value of any ancillary claims which are determined to be superior to the United States' interest under 21 U.S.C. § 853(n)(6), and after deducting statutory costs of the United States Marshals Service under 21 U.S.C. § 881(e)(2)(A).

**4.** The most recent appraisal submitted by the Government estimates that the fair market value ("FMV") of the GenPhar Property "as-

is" is $1,200,000, and recommends that the research facility be torn down because of construction defects and other problems. The appraisal submitted by Defendants gives an "as-is" FMV of $9,000,000, with a higher hypothetical FMV upon completion of the research facility.

**5.** The Government has submitted two mortgages against the GenPhar Property: a mortgage involving Rentec Management Systems as mortgagee, (the "Rentec mortgage") dated July 15, 2011, in the amount of $250,000, signed by the Chief Operating Officer of GenPhar (ECF No. 606–9); and the mortgage involving Mandra Applied Materials, Ltd., as mortgagee, (the "Mandra mortgage") dated December 20, 2013, in the amount of $4,647,917.90, signed by John Dong, (ECF No. 606–4).

Government's related concern is that the remaining substitute property should continue to be restrained. The Government argues that if such property were to be returned to defendants at this time, and the net forfeiture proceeds from the sale of the GenPhar Property were insufficient to satisfy the money judgment, the Government would be left without recourse to pursue forfeiture of the other property, because, having been returned to Defendants, such property would likely have been dissipated, or otherwise be unavailable.

Defendants oppose forfeiture,[6] and oppose holding the forfeiture of substitute assets in abeyance. (*See* ECF Nos. 608; 612; 811.) Defendants assert their innocence, contending that only non-grant funds were used to construct the research building on the GenPhar Property. Relatedly, Defendants urge that even if grant funds were used for this purpose, their actions were not criminal, but were, at most, in the nature of civil contractual disputes over the appropriate use of federal grant funds. Defendants also contend that the involvement of one of the case agents, former Special Agent Larry Leonard, with the Defense Criminal Investigative Service, was a violation of the Posse Comitatus Act, thereby justifying dismissal of the entire case and related forfeiture. (ECF No. 634 at 7.)

Regarding the abeyance issue, Defendants maintain that the value of the GenPhar Property is more than sufficient to satisfy the proposed FMJ, and that forfeiture of substitute assets is therefore unnecessary. Defendants therefore seek the return of the other currently restrained substitute assets. (ECF Nos. 603; 614 at 2).

Relatedly, Defendants contend that the mortgages on the property could not prevail as ancillary claims under 21 U.S.C. § 853(n)(6).[7] Defendants further contend that the "Rentec" mortgage, (ECF No. 606-9), in the amount of $250,000, has been effectively extinguished by the Stipulation of Dismissal, (ECF No. 107), filed in the case of *SCBT, N.A. v. GenPhar Inc., et al.*, Civ. No. 2-11-2532-RMG. However, review of the filings in that case reveals that the only mortgage extinguished in that litigation was that of South Carolina Bank & Trust (ECF No. 1-1 at 18-27), not the Rentec mortgage.

Pursuant to Fed. R. Crim. P. 32.2(b)(1)(B), the Court held a hearing on the Government's POF motions on April 21, 2017. The hearing elicited the following testimony from the parties' witnesses:

Jonathan Vaughn, the Government's auditing expert, testified that the amount of grant funds misdirected into the construction of the GenPhar building was $2,903,537.83. He further testified that, because of Defendants' commingling of grant funds and non-grant funds, coupled with Defendants' routing of such commingled funds through multiple accounts, any effort to trace grant funds into other specific property of the defendants, for the purpose of determining whether such property constitutes proceeds of the offenses, would be extremely time-consuming, resource-intensive, and, in the end, likely futile.

---

6. Since the filing of the Government's first POF motion, the parties have filed multiple pleadings related to disputes over forfeiture and restraint of property. Although the Court has thoroughly considered all such pleadings and arguments, the Court will not review and summarize them all here.

7. The Court observes that the opportunity to file such third-party claims is reserved for the process of ancillary proceedings, which have not yet begun. Accordingly, it would be inappropriate at this juncture for the Court to opine regarding whether, and by whom, ancillary petitions may be filed, or the likelihood of their success.

Jeff Ball, Commercial Plans Examiner for the Town of Mt. Pleasant, testified for the Government, *inter alia*, that because the GenPhar building is the subject of multiple building code violations, some of which are serious, Mt. Pleasant has not issued a Certificate of Occupancy for the building, and will not do so unless the violations are corrected.

Michael Nelson, a Deputy U.S. Marshall specialized in locating potentially forfeitable property, testified for the Government that he made substantial efforts to locate property of the defendants beyond that already restrained, but was unable to find anything beyond a boat of questionable value.

Marshall Smith, Special Agent with the Criminal Investigation Division of the SCDOR, testified that SCDOR has levied $112,032.86 in tax liens against the GenPhar Property, based upon GenPhar's failure to file returns related to South Carolina's use tax and employer withholding tax.

Bradley Belcher, the appraiser for the Government, testified, *inter alia*, that the as-is FMV of the GenPhar property is $1,200,000; that such value does not take into account third-party liens; and, that the highest and best use of the property would be to raze the GenPhar building. He could not opine on how much the construction costs would be to remediate the building code violations.

Appraiser Gary Schwab testified for Defendants that, although he had previously appraised the property with an as-is FMV of $9,000,000, he was not aware at that time of the various building code violations, and that Defendant Dong had advised him that the only costs for remediation would be for replacement of broken windows, and for repairs for cosmetic damages. He testified that his appraised value did not take into account the existing liens on the property. He also could not opine on how much the construction costs would be to remediate the building code violations.

During the hearing, GenPhar's counsel made the Court aware of an interested buyer in attendance who had made an offer of $1,700,000 to purchase the property.

## II. FORFEITURE AUTHORITIES AND LEGAL STANDARDS

### A. Forfeiture

"A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). "[T]he court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). If the forfeiture is contested, the court must conduct a hearing on either party's request. Fed. R. Crim. P. 32.2(b)(1)(B).

"If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). Generally, co-defendants are jointly and severally liable for a forfeiture money judgment. *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) (all coconspirators are jointly and severally liable for the amount of the forfeiture regardless of how much or how little they benefitted from the conspiracy).[8] "In a multi-defendant case, each of the defen-

8. The issue of joint and several liability under Section 853 is currently pending before the Supreme Court. *See Honeycutt v. United States*, Case. No. 16–142, filed August 1, 2016.

dants is jointly and severally liable for the forfeiture of the proceeds of the offense or the money otherwise involved in it." Stefan D. Cassella, *Asset Forfeiture Law in the United States* (2nd Ed.), p. 700 (footnote omitted).

■ The amount of the money judgment ultimately imposed can differ from that listed in an indictment. *See United States v. Poulin*, 690 F.Supp.2d 415, at 422–23, 430 (E.D. Va. 2010) (although the indictment's forfeiture notice sought an FMJ of "at least $850,000", district court ordered FMJ exceeding $1.3 million) (collecting cases).

■ The court's forfeiture determinations are based on evidence already in the record, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(B). Because criminal forfeiture proceedings are part of the sentencing phase, reliable hearsay is admissible. *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010); *United States v. Ivanchukov*, 405 F.Supp.2d 708, 709 n.1 (E.D. Va. 2005).

■ "A district court may order the forfeiture of (1) proceeds obtained as a result of the crime for which a defendant was convicted or (2) property used or intended to be used to commit or to facilitate the commission of the crime for which a defendant was convicted." *United States v. Herder*, 594 F.3d 352, 363–64 (4th Cir. 2010) (citing 21 U.S.C. § 853(a)).[9] The government has the burden of proof and must establish that the property is subject to forfeiture by a preponderance of the evidence. *Id.* at 364. Section 853 "is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from

those who acted in concert with him in furthering the criminal enterprise." *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996).

■ Under Fed. R. Crim. P. 32.2(b)(1), the court is required to determine whether the government has "established the requisite nexus between the property and the offense." The Fourth Circuit utilizes the "substantial connection" standard under which "the government must establish that there was a substantial connection between the property to be forfeited and the offense." *Herder*, 594 F.3d at 364. The government must establish the requisite nexus by a preponderance of the evidence, because forfeiture constitutes an aspect of the sentence imposed, rather than a substantive element of an offense. *United States v. Neal*, 2003 WL 24307070, at *2 (E.D. Va. 2003) (citing *Libretti v. United States*, 516 U.S. 29, 39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995); *United States v. Tanner*, 61 F.3d 231, 235 (4th Cir. 1995)). The government "may rely on circumstantial evidence to meet this burden of proof." *United States v. Patel*, 949 F.Supp.2d 642, 648 (W.D. Va. 2013) (citing *Herder*, 594 F.3d at 364).

Where forfeiture is applicable, it is mandatory. 28 U.S.C. § 2461(c) states: "If the defendant is convicted of the offense giving rise to the forfeiture, the court *shall* order the forfeiture of property as part of the sentence in the criminal case . . . ." (emphasis added). "The word 'shall' does not convey discretion. It is not a leeway word, but a word of command." *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) (interpreting Section 2461(c)). The order of forfeiture must be included in the criminal judgment. Fed. R. Crim. P. 32.2(b)(3).

---

**9.** 28 U.S.C. § 2461(c) incorporates the provisions of 21 U.S.C. § 853 into all criminal forfeiture proceedings.

■ Imposition of forfeiture is mandatory notwithstanding that restitution may also be required as part of a criminal sentence. *United States v. Bollin*, 264 F.3d 391 (4th Cir. 2001) (defendant ordered to pay $1.2 million forfeiture judgment and $783,000 in restitution); *United States v. O'Connor*, 321 F.Supp.2d 722, 729 (E.D. Va. 2004) (forfeiture and restitution serve different purposes; "forfeiture generally serves to remove from an offender the fruits and instrumentalities of his crime, and thereby provides a powerful disincentive to commit the crime in the first instance"; restitution serves primarily to compensate the victim).

■ Defendants may not use forfeiture proceedings to relitigate the legality of their conduct. *See United States v. Warshak*, 631 F.3d 266, 331 (6th Cir. 2010) (affirming district court's refusal to let defendant introduce evidence in forfeiture proceedings to show that his conduct was not illegal; in the forfeiture phase, the legality of the conduct "is no longer a live issue"); *see also* Fed. R. Crim. P. 32.2(b)(1)(B) (forfeiture determinations only take place after conviction).

18 U.S.C. § 981(a)(1)(C) provides, in pertinent part, for the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense." Although 18 U.S.C. § 981(a) is an umbrella forfeiture statute that generally applies to civil forfeitures, its provisions are incorporated into criminal forfeitures by 28 U.S.C. § 2461(c), which states, in pertinent part:

If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure.

"Section 2461 thus acts as a 'bridge' or 'gap-filler' between civil and criminal forfeiture, authorizing criminal forfeiture when no criminal forfeiture provision applies to the crime charged against a particular defendant but civil forfeiture for that charged crime is nonetheless authorized." *Blackman*, 746 F.3d at 143 (certain internal quotation marks omitted).

As relates to the foregoing statutory provisions, all of the counts of conviction are either specified unlawful activities ("SUAs"), or a conspiracy related thereto. Count 7 (Theft of Government Property) charges a violation of 18 U.S.C. § 641, which is defined as an SUA by 18 U.S.C. § 1956(c)(7)(D). Counts 13 through 34 (Wire Fraud) charge violations of 18 U.S.C. § 1343, which is defined as an SUA by 18 U.S.C. § 1956(c)(7)(A) (incorporating 18 U.S.C. § 1961(1)(B)). Count 1 charges a conspiracy in violation of 18 U.S.C. § 371, the objects of which included the violations of 18 U.S.C. §§ 641 and 1343 contained at Counts 7 and 13–34. Accordingly, any property constituting or derived from proceeds traceable to the counts of conviction in this case is subject to forfeiture.

### B. Forfeiture of Substitute Assets

■ 21 U.S.C. § 853(p) governs forfeiture of substitute assets. As with direct forfeiture of proceeds, the government must show its entitlement to substitute assets by a preponderance of the evidence. *United States v. Poulin*, 690 F.Supp.2d 415, 421–22 (E.D. Va. 2010). Section 853(p)(1)(A) states that "if any property described in subsection (a) of this section, as a result of any act or omission of the defendant—(A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a

third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty ... the court shall order the forfeiture of any other property of the defendant, up to the value" of the property subject to forfeiture. The language of § 853(p) is "not discretionary; the statute mandates forfeiture of substitute assets when the tainted property has been placed beyond the reach of a forfeiture." *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) (internal quotation marks omitted).

■ "Because criminal forfeiture is remedial in nature, section § 853 states that the forfeiture provisions its provisions 'shall be liberally construed' in order to effectuate this purpose." *Patel*, 949 F.Supp.2d at 649 (citing 21 U.S.C. § 853(o)). Applying this provision, the Fourth Circuit held that the government's "due diligence" showing was satisfied through the submission of an affidavit of a case agent attesting that she had looked for directly forfeitable property, but could not find any due to the acts or omissions of the defendant. *Alamoudi*, 452 F.3d at 315.[10] Moreover, a defendant's act in commingling tainted and untainted funds may also trigger section 853(p). *See United States v. Swenson*, 2014 WL 3748301, *9–10 (D. Idaho 2014) (if defendant has caused the directly forfeitable proceeds to be commingled, and an agent testifies that they cannot be traced and separated without significant effort and expense, the court may order the forfeiture of substitute assets).

■ Additionally, although a defendant must have a hand in the prohibited "act or omission" to trigger section 853(p)(1)(A), there is no requirement that a such act or omission involve obstructionist motives (such as, for example, the intent to conceal property from the government). *See United States v. Jameel*, 2014 WL 5317860, *2 (E.D. Va. 2014) (to the extent the Government must show property was "unavailable" to obtain a money judgment, it did so by showing property had so many liens on it the equity was zero); *United States v. Sokolow*, 1995 WL 113079, *1 (E.D. Pa. 1995) (where forfeitable property is diminished in value due to defendant's bad business investment, forfeiture of substitute assets is appropriate; investment is an "act" of the defendant), *aff'd*, 81 F.3d 397 (3d Cir. 1996); *United States v. Hovind*, 305 Fed.Appx. 615, 618–23 (11th Cir. 2008) (affirming forfeiture of substitute assets where defendants transferred forfeitable assets associated with their offenses to third parties and used them to pay business expenses).

■ The court may order the forfeiture of substitute assets to satisfy a money judgment, where the money judgment represents the value of the proceeds of the offense that cannot be directly forfeited for one of the reasons set forth in section 853(p)(1)(A). *United States v. Candelaria–Silva*, 166 F.3d 19 (1st Cir. 1999) (once the Government has obtained a forfeiture money judgment, it may forfeit defendant's real property in partial satisfaction of that judgment); *United States v. Davis*, 177 F.Supp.2d 470 (E.D. Va. 2001) (if property cannot be forfeited as directly traceable to the offense, it can be forfeited as a substitute asset and used to satisfy the money judgment).

■ The "relation-back doctrine" of federal forfeiture law, codified at 21 U.S.C. § 853(c), prevents criminal defendants

10. In this case, the Government has submitted more than one affidavit from Special Agent Leonard regarding his unsuccessful efforts to locate property of the defendants constituting directly forfeitable proceeds. *See* ECF Nos. 584–1 at 2–5; 597–3; 677–1.

from defeating forfeiture simply by transferring forfeitable property to third parties.[11] Under the relation-back doctrine, the United States' interest in such transferred property vests at the moment of the "act giving rise to forfeiture." § 853(c) "This 'relation-back' provision enables the government to reach forfeitable assets in the hands of third parties at the time of conviction; it thus prevents defendants from escaping the impact of forfeiture by transferring assets to third parties." *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005) (certain internal quotation marks omitted).

■■■ In the Fourth Circuit, these relation-back provisions apply with equal force to substitute assets, vesting the government's interest in substitute property at the time of the offense:

> Given that the purpose of the relation-back provision in § 853(c) was to prevent defendants from escaping the impact of forfeiture by transferring assets to third parties, and the purpose of § 853(p) was similarly to address this very impediment to significant criminal forfeitures, the substitute property that is subject to forfeiture under § 853(p) must be read to include all property of the defendant at the time of the commission of the acts giving rise to the forfeiture.

*United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003) (internal citations and punctuation omitted).[12]

■■■ If the conditions set forth in section 853(p)(1) have been met, section 853(p)(2) mandates forfeiture of any other property "of the defendant." Determining whether an asset is property "of the defendant" may require resort to state law defining ownership interests in property. "[B]ecause forfeiture proceedings implicate property rights which have traditionally been measured in terms of state law, and because section 853 contains no rule ... , it is appropriate to refer to state law in a forfeiture proceeding." *United States v. Smith*, 966 F.2d 1045, 1054 n.10 (6th Cir. 1992) (certain quotation marks omitted). Once the ownership interests are defined under state law, however, the federal forfeiture statutes determine whether those property interests must be forfeited to the Government. *United States v. Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996).

Although the provisions of 21 U.S.C. § 853 govern forfeiture of property, they also are designed to ensure the availability of potentially forfeitable property, in part through the issuance of restraining orders, seizure warrants, and other orders (§ 853(e), (f), (g)). Moreover, Congress has instructed that "[t]he provisions of [Section 853] shall be liberally construed to effectuate its remedial purposes." § 853(*o*). Additionally, Fed. R. Crim. P. 32.2(e)(1)(B) vests the court with continuing jurisdiction over substitute assets.

■■■ Finally, although preponderance standard governs forfeiture determina-

---

11. Section 853(c) states:
Third party transfers. All right, title, and interest in [forfeitable property] vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a third party ... shall be forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of such purchase was reasonably

without cause to believe that the property was subject to forfeiture under this section.

12. The continuing viability of *McHan*, or at least certain aspects of that decision, are currently the subject of an appeal pending before the Fourth Circuit. *See United States v. William Todd Chamberlain*, Fourth Circuit Docket No. 16-4313. Regardless, at this time, *McHan* remains the controlling law in the Fourth Circuit.

tions, the "probable cause" standard governs restraining orders. *See United States v. Monsanto*, 491 U.S. 600, 615–16, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (the standard for issuing a restraining order is probable cause).

## III. DISCUSSION

### A. Dong's Motion to Stay Forfeiture

 Dong moves the Court to stay the forfeiture order pending appeal. (ECF No. 811.) Under Rule 32.2(d) of the Federal Rules of Criminal Procedure, "[i]f a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." As evidenced by the text of Rule 32.2(d), a court is not required to stay an order of forfeiture. District courts have found that the following four factors should be considered in determining whether a stay pending an appeal of a forfeiture order should be granted: "(1) the likelihood of success on appeal; (2) whether the forfeited assets will depreciate over time; (3) the forfeited assets' intrinsic value to the defendant; and (4) the expense of maintaining the forfeited property." *United States v. Ngari*, 559 Fed.Appx. 259, 272 (5th Cir. 2014).

In his brief motion, Defendant makes no attempt to address any of the above factors in seeking a stay. Upon review, the Court finds that each of the factors weighs against a stay. Specifically, the Court finds that: (1) it is unlikely that Dong will succeed on appeal as the trial was fairly conducted and the verdict was fully supported by the evidence; (2) the GenPhar building, the largest asset for forfeiture, has already depreciated in value and the evidence indicates it will continue to do so; (3) there is no intrinsic value to the GenPhar building as construction was never completed and it has never been occupied as a residence or business office; and (4) maintaining the GenPhar building is a substantial expense and has already cost the U.S. Marshal's Service thousands of dollars. For these reasons, the Court finds no basis to stay the forfeiture pending appeal.

### B. Defendant's Arguments Against Forfeiture

 As previously noted, Defendants maintain that they either did not use grant funds for non-allowable purposes (i.e., for purposes not authorized under grants), or that if they did, such use did not constitute a criminal offense, but was instead merely a good-faith dispute about the appropriate use of such funds. However, the multiple guilty verdicts on the counts of conviction refute Defendants' contentions, and their claims of innocence are no longer viable. As previously noted, Defendants may not use forfeiture proceedings to re-litigate the issue of guilt, which has already been established as a matter of law in this case. Accordingly, the Court rejects these arguments as they relate to forfeiture.

 In addition, as a purported defense against forfeiture (or restraint of property), Defendants argue that Agent Leonard's status with DOD–OIG constitutes a violation of 18 U.S.C. § 1385, the "Posse Comitatus Act" ("PCA"). (ECF Nos. 701 at 4; 739 at 9–13). However, Judge Houck previously rejected Defendants' PCA argument multiple times. Defendants filed their first PCA motion to dismiss or suppress on March 30, 2014. (ECF No. 404.) The Court denied the PCA motion on September 11, 2014. (ECF No. 442.) Noting that the Fourth Circuit has never countenanced dismissal or suppression for an alleged PCA violation, Judge Houck determined that it was unnecessary to reach the issue of whether there was such a violation in this case. (ECF No. 442 at 18.)

Approximately one month later, Defendants renewed their motion (ECF 453), which was again denied. (ECF 455.) Defendant Dong also unsuccessfully raised the PCA issue in the campaign financing case. *United States v. Dong*, Case No. 2:11–510, ECF 325, 357. On July 18, 2016, Defendant Dong again made the PCA argument in his motion seeking dismissal or a new trial. (ECF Nos. 634 at 7; 637 at 10.)

In light of the prior rulings on this precise matter, this Court concludes that it would not be appropriate to reconsider an issue that has already been decided multiple times against Defendants. Even if this Court were to revisit the issue, it concludes that there is no PCA violation here, and that even if there were, it would not justify foreclosing the remedial remedy of forfeiture.

■ The purpose of the PCA "is to uphold the American tradition of restricting *military* intrusions into civilian affairs, except where Congress has recognized a special need for military assistance in law enforcement." *United States v. Al–Talib*, 55 F.3d 923, 929 (4th Cir. 1995) (emphasis added; internal citation omitted). The PCA prohibits using "the Army or the Air Force" to execute the laws of the United States, and has since been construed, together with 10 U.S.C. § 375,[13] to extend to all active duty members of the armed forces. *See United States v. Khan*, 35 F.3d 426, 431 (9th Cir. 1994).

The DCIS is a component of the DOD–OIG, having been established by a 1982

amendment to the Inspector General Act of 1978 (IG Act), 5 U.S.C. app. 3. Significantly, the DOD Inspector General is prohibited by statute from being in the armed forces. *See* 5 U.S.C. Appx. § 8(a) ("No member of the Armed Forces, active or reserve, shall be appointed Inspector General of the Department of Defense.") This prohibition thereby avoids any suggestion that the DOD–IG's *civilian* activities could be deemed to conflict with the PCA's restrictions on *military* involvement.

The DCIS has explicit authority to investigate fraud involving the Department of Defense, such as the offenses involved in this case. Congress has authorized the DOD–IG to investigate "fraud, waste and abuse in the programs and operations of the Department." 5 U.S.C. app. §§ 8(c)(1), (2) and (4). Importantly, Congress has decreed that "[t]he provisions of [the PCA] shall not apply to audits and investigations conducted by, under the direction of, or at the request of the Inspector General of the Department of Defense to carry out the purposes of this Act." 5 U.S.C. app. § 8(g).

Based upon these provisions, the Court concludes that Agent Leonard's involvement in this investigation and prosecution did not constitute a violation of the PCA, and that even if such a violation were to be assumed, it would not provide any basis upon which to foreclose restraint or forfeiture of property in this case.

## C. Forfeiture Money Judgment

■ The Government's Sentencing Memorandum summarizes much of the sa-

---

**13.** 18 U.S.C. § 1385 states:
Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.
10 U.S.C. § 375 states, in relevant part:

The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that any activity ... under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

lient trial testimony. (ECF No. 761.) Such testimony and guilty verdicts establish that Defendants misdirected federal grant funds earmarked and restricted for research, by using such funds for non-allowable purposes, including building construction and lobbying expenses.

The trial record establishes that Defendants were involved in research to combat various infectious diseases. Defendants applied for and received federal grants for this purpose. Defendants also received private funding from third parties ("non-grant funds"). Defendants decided to build the GenPhar building as a large research and manufacturing facility. After experiencing financial difficulties when the non-grant funds were becoming depleted, Defendants turned to grant funds to carry on with their construction plans. Defendants used at least $2,903,537.83 in grant funds for the construction of the GenPhar building. Defendants misdirected at least another $308,062 in grant funds for other non-grant purposes, including for lobbying expenses, legal fees, consultants, and advertising/marketing costs. (ECF No. 761–14.)

The Court concludes that the grant funds so misdirected constitute gross proceeds of the offenses of conviction, subjecting Defendants to the imposition of a money judgment in the amount of $3,211,599.83. Property of Defendants, whether proceeds or substitute assets, may be forfeited to satisfy the money judgment.

### D. Value of the GenPhar Property

 The dispute over the value of the GenPhar Property has continued for several years. Faced with similar assertions in 2012, Judge Houck rejected the higher value proffered by Defendants, finding at that time that the property was worth only $1,560,000 (not taking then-existing liens into account). (ECF 255 at 7.) Faced with similar "high value" arguments from defendants, this Court also declined to depart from that lower valuation in a subsequently issued restraining order. (ECF 658 at 4.) The GenPhar Property continues to deteriorate, and has substantial code violations related to serious construction defects. These factors support a lower value. Moreover, at this time, the "firm offer" tendered by one prospective purchaser is only $1,700,000—again supporting the lower value. Additionally, Defendants' acts and/or omissions have resulted in substantial additional debts related to the property in the form of mechanic's liens,[14] tax liens, and mortgage liens. Although Defendants may argue that the mortgage debts will not survive the process of ancillary hearings, the Court cannot divine the future of such proceedings, nor offer predictions regarding the success or failure of any ancillary petitions which have yet to be filed.

As previously noted, the valuation issue relates to whether the Court should continue to restraint Dong's other property[15] as substitute assets, and whether to hold forfeiture of such property in abeyance pending the resolution of the forfeiture and proposed sale of the GenPhar Property. If, after resolution of ancillary proceedings and issuance of a Final Order of Forfeiture, the sale takes place, and the net forfeiture amount realized therefrom is sufficient to satisfy the money judgment, then forfeiture of the other substitute assets will be rendered moot. If insufficient, then forfeiture of such substitute assets will become necessary—as will their continued restraint at this time.

Because of the uncertainty regarding the value of the property, the Court will

---

14. The unpaid mechanic's liens in the record total $60,897.97. (ECF No. 606–8 at 3.)

15. None of the remaining property currently under restraint is titled to GenPhar.

not depart from the prior valuation as initially determined by Judge Houck. On the related issue of whether the remaining substitute assets may ultimately be subject to forfeiture in order to satisfy the money judgment, the Court is mindful of two guiding principles underlying section 853. First, courts should liberally construe the provisions of the statute in order to effectuate its remedial purposes. § 853(*o*). Second, courts may take any appropriate actions which preserve the availability of defendants' property for forfeiture. § 853(e)(1).

Applying those principles here, the Court concludes that it is appropriate, necessary, and remedial to continue the restraint of Defendant Dong's remaining substitute assets pending the resolution of ancillary proceedings related to the GenPhar Property, entry of a Final Order of Forfeiture related thereto, and, if applicable, government disposition of the GenPhar Property.[16] Accordingly, the Court grants the government's motion to hold the forfeiture of such other assets in abeyance (ECF 656), and continues the restraining orders currently in effect (ECF Nos. 255; 658; 681) until further order of this Court.[17]

### E. Prohibited Acts or Omissions of the Defendants Under Section 853(p)(1)

 The Court finds that Defendants have engaged in acts or omissions resulting in liens against the GenPhar Property. These include taking out two mortgages on the GenPhar Property (the Rentec and Mandra mortgages) totaling $4,897,917.90;

failing to file tax documents, resulting in the SCDOR levying tax liens in the amount of $112,032.86; and, failing to pay workers, resulting in mechanic's liens totaling $60,897,97. The Court concludes that Defendants' actions in burdening the property with such liens and debts constitute prohibited "acts or omissions" on their part under section 853(p)(1), which have substantially diminished the value of the property under section 853(p)(1)(D).

The Court finds that Defendants failed to take reasonable steps to secure and maintain the property as ordered by the original restraining order, resulting in vandalism, theft, and deterioration. The Court further finds that these acts and omissions constitute prohibited "acts or omissions" on defendants' part under section 853(p)(1), which have substantially diminished the value of the property under section 853(p)(1)(D).

The Court finds that Defendants' actions in disbursing grant funds in the amount of $308,062 for lobbying and other non-allowable expenses constituted acts or omissions by defendants under Section 853(p)(1), which have resulted in the transfer of directly forfeitable proceeds to third parties under section 853(p)(1)(B).

The Court finds that Defendants commingled grant funds and non-grant funds, which were then transferred through multiple accounts, such that Government efforts to trace the grant funds into other property (for the purpose of determining the existence of other directly forfeitable property) would be time-consuming, resource-intensive, prohibitively expensive,

---

16. For these reasons, the Court denies Dong's "Motion for Reconsider Order Granting Government's Supplemental Motion for Forfeiture," (ECF No. 701), which seeks the release of those currently restrained substitute assets.

17. The Court grants the Government's motion to strike as unnecessary the provision in the

original restraining order (ECF No. 255 at 15) regarding the appointment of a receiver for GenPhar. (ECF No. 834.) As the Government notes, GenPhar is no longer a going concern. Therefore, managing GenPhar is no longer viable and the appointment of a receiver is not necessary. The remainder of the restraining order (ECF No. 255) is still in effect.

and, in all likelihood, futile. The Court concludes that Defendants' commingling and transfers of funds in this fashion constitute acts or omissions under section 853(p)(1). The Court further finds that, based upon such acts or omissions, the Government cannot, upon the exercise of due diligence, locate other directly forfeitable property of Defendants under section 853(p)(1)(A); and that as a result of such acts or omissions, the grant funds were commingled with other property which could not be divided without difficulty under 853(p)(1)(E).

The Court finds that the inability of the government to locate other directly forfeitable property of Defendants was the result of one or more of the above-described acts or omissions of Defendants. Therefore, the Court concludes that the continued restraint of the substitute assets is warranted.

### E. The GenPhar Property

1. **Proceeds:** Based upon the record in this case, the Court finds that the GenPhar Property is titled in the name of defendant GenPhar, Inc. The Court further finds that the GenPhar Property constitutes proceeds of the grant fraud underling the convictions in this case, inasmuch as the defendants misdirected at least $2,903,537.83 in grant funds into the construction of the GenPhar building. As such, the GenPhar Property constitutes or is derived from proceeds of violations of the counts of conviction, all of which are either specified unlawful activities, or conspiracy related thereto. Accordingly, the GenPhar Property is forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) (as incorporated into criminal forfeiture by 28 U.S.C. § 2461(c)).

2. **Substitute Asset:** In the alternative, the GenPhar Property is forfeited as a substitute asset under 21 U.S.C. § 853(p)(2), based upon the above-described acts or omissions of Defendants.

### IV. ORDER

For the foregoing reasons, the Court **GRANTS IN PART** the Government's first POF motion, (ECF No. 593), insofar as it pertains to the imposition of a forfeiture money judgment and the forfeiture of the GenPhar Property. The Court further **GRANTS IN PART** the second POF motion, (ECF No. 793), and restrains the SunTrust Accounts to potentially be forfeited as substitute assets at a later date. The Court also **GRANTS** the Government's amended motion to hold the forfeiture of substitute asset in abeyance, (ECF No. 656), and **GRANTS** the Government's motion to strike a provision in the restraining order, ECF No. 255, (ECF No. 834). Finally, the Court **DENIES** Dong's motion to stay the forfeiture order pending appeal, (ECF No. 811), and **DENIES** Dong's "Motion for Reconsider Order Granting Government's Supplemental Motion for Forfeiture," (ECF No. 701).

Accordingly, it is hereby **ORDERED** that the below-described property, and all right, title, and interest of the defendants, **JIAN–YUN DONG**, a/k/a John Dong, **GENPHAR, INC.**, and **VAXIMA, INC.**, in and to such property, is hereby forfeited to the United States of America, for disposition in accordance with law, subject to the rights of third parties in such property under 21 U.S.C. § 853(n):

### A. CASH PROCEEDS/MONEY JUDGMENT:

A sum of money equal to all proceeds the defendants, **JIAN–YUN DONG**, a/k/a John Dong, **GENPHAR, INC.**, and **VAXIMA, INC.**,,obtained directly or indirectly as the result of the offenses charged in the Third Superseding Indictment, or traceable to such property; that is, a minimum of $3,211,599.83 in United States currency, for which the defendants are jointly and severally liable, along with interest there-

on at the rate provided for in 28 U.S.C. § 1961.

## B. REAL PROPERTY:

Pursuant to 18 U.S.C. § 981(a)(1)(C) (as incorporated by 28 U.S.C. § 2461(c)), and/or 21 U.S.C. § 853(p)(2), the below-listed real property is forfeited, as is all right, title and interest of the defendants, **JIAN–YUN DONG**, a/k/a John Dong, **GENPHAR, INC.** and **VAXIMA, INC.**, in and to such property. Such real property is more fully described as follows:

**S. Morgan Point Road (also known as 1200 Innovation Way)**

Mount Pleasant, South Carolina 29466

Sub–Division: Christ Church Parish

Government Asset Identification Number: 12–DEF–000001

All that certain piece, parcel or tract of land with any and all improvements thereon, situate, lying and being in Christ Church Parish, Town of Mount Pleasant, Charleston County, South Carolina and containing 2.595 Acres, and designated as Parcel B, and shown on that certain Plat prepared by Atlantic Coast Land Surveying entitled "Subdivision, Recommendation and Property Line Adjustment Plat Showing A New 6.000 Acre 'Parcel A' Prepared for University Medical Associates of the Medical University of South Carolina and Oakland Properties, LLC, Created from a 0.128 Acre Parcel With TMS # 600–00–00–056, A 0.260 Acre Portion of a Parcel With TMS # 600–00–00–055, A 0.749 Acre Portion of a Parcel with TMS # 600–00–00–057 and A 4.863 Acre Portion of a Parcel with TMS # 600–00–00–047 and a New 2.595 Acre 'Parcel B' Created From the Remaining Parcel With TMS # 600–00–00–057 and A 0.804 Acre Portion of a Parcel with TMS # 600–00–00–047", dated April 29, 2008, last revised June 17, 2008, and recorded in Plat Book L08 at Page 0162 in the RMC Office for Charleston County, South Carolina.

BUTTING, BOUNDING, MEASURING AND CONTAINING as by reference to said plat will more fully appear. Being the same property conveyed to the Mortgagor herein by deed of Oakland Properties, LLC., dated March 28, 2007 and recorded in Book S627, page 692 in the RMC Office for Charleston County. TMS # 600–00–00–056

It is further **ORDERED** that forfeiture proceedings against the below-described property are to be held in abeyance until further order of this Court, and that such property is restrained under the same terms and conditions as the restraining orders previously issued against such property until further order of this Court:

## A. REAL PROPERTY:

1. **441 Lake Moultrie Drive**

Bonneau, South Carolina 29431

Berkeley County, SC

Government Asset Identification Number: 12–DEF–000003

All that certain lot, piece or parcel of land, known and designated as Lot 2, Section IV, on a plat of Lake Moultrie Shores Subdivision, dated March 23, 1965, recorded in Plat Book 0, at page 176, Clerk of Courts Office for Berkeley County (a/k/a ROD Office for Berkeley County; said lot having such buttings and boundings, measurements and dimensions as are shown on said plat; AND also the assumption of that lease from South Carolina Public Service Authority, dated April 20, 1979. Subject to those Restrictions outlined in the Deed from Lake Moultrie Shores, Inc. To Edwards A. Riley and Katherine Riley recorded in Book A295, at page 175,k and those Restrictive Covenants recorded in Book C113, at Page 108; Book C114, at Page 54; and Book C115, at Page 137.

Being same property conveyed to the Granters herein by deed of Edwards A. Riley, Jr. dated July 5, 3003 and recorded in Book 2819 Page 84 in the RMC Office for Berkeley County Tax Map Number: 057-01-04-004

2. **71 Delahow Street**

Daniel Island, South Carolina

Government Asset Identification Number: 15-DCI-000120

ALL that certain lot, piece, parcel of land and all improvements thereon, located on Daniel Island, situate, lying and being in the City of Charleston, Berkeley County, SC and known and Lot 29, Block C, Parcel B, as shown and designated on a plat by Thomas & Hutton Engineering Co., entitled "Final Subdivision Plat of Parcel B, Block C, Lots 17-29, Block D, Lot 5-8 & 27-31, Block E, Lots 4-6, Blocks F-H & Block I, Lots 1-5, Daniel Island Park, Owned by Daniel Island Associates, LLC" by Thomas & Hutton Engineering Co., dated April 25, 2000 and recorded in the ROD Office for Berkeley County in Plat Cabinet O at Page 284-A, said lots hav-

ing such size, shape, dimensions, buttings and boundings as will by reference to said plat more fully appear.

Being the same property conveyed to Neal P. Vhor and Caroline J. Vohr by deed of Kenneth C. Marcoon dated September 11, 2007 and recorded in the ROD Office for Berkeley County in Plat Cabinet 6856 at Page 290 on September 14, 2007.

Being the same property conveyed to Centigene, LLC by deed of Neal P. Vhor and Caroline J. Vohr dated June 13, 2014 and recorded in the ROD Office for Berkeley County in Plat Cabinet 1081 at Page 52 on June 20, 2014

SUBJECT to any and all restrictions, covenants, conditions, easements, rights of way and all other matters affecting subject property of record in the Office of the RMC for Berkeley County, South Carolina.

TMS Number: 271-15-02-014

B. **BANK ACCOUNTS/INVESTMENT ACCOUNTS:**

1. All funds contained in the following Oppenheimer Funds retirement accounts:

| Account Number | Account Description |
|---|---|
| 00847 8477189413 | RPSS TR Simple IRA, Registered to GenPhar, Inc., FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000010) |
| 00836 8360552915 | RPSS TR IRS, FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000011) |
| 00836 8360432201 | RPSS TR Simple IRA, Registered to GenPhar, Inc., FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000012) |
| 00701 7016065196 | RPSS TR Simple IRA, Registered to GenPhar, Inc., FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000013) |
| 00591 5910221221 | RPSS TR Simple IRA, Registered to GenPhar, Inc., FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000014) |
| 00252 2521445444 | RPSS TR IRA, FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000015) |
| 00226 2261697003 | RPSS TR Simple IRA, Registered to GenPhar, Inc., FBO Jian-Yun Dong<br>(Government Asset ID No. 16-DCI-000016) |

2. All funds contained in South Carolina Deferred Compensation Program 401(k) Account No. xxx-xx-xxxx, registered to Jiayun Dong (Government Asset ID No. 12-DEF-00006).

3. All funds contained in three TIAA CREF MUSC retirement accounts registered to Jiayun Dong (Government Asset ID No. 12-DEF-00007), further described as follows:

a. TIAA RC Traditional Account No. F001525-2;

b. CREF RC Account No. H001525-8; and,

c. TIAA GRA Traditional Account No. 3506411-2.

4. All funds contained in SunTrust Bank Account Number 1000193937819

In the names of Jian–Yun Dong and Ping Zhao

(Government Asset Identification Number: 17–DCI–000019).

5. All funds contained in SunTrust Bank Account Number 1000193937827

In the names of Jian–Yun Dong and Ping Zhao

(Government Asset Identification Number: 17–DCI–000020).

It is further **ORDERED:**

1. That upon entry of the criminal judgment, the POF becomes final as to Defendant, and shall be made a part of the sentence and included in the criminal judgment, pursuant to Rule 32.2(b)(4)(A.

2. That pursuant to Rule 32.2(e), the United States may at any time move to amend the POF to forfeit property in which defendants have an interest, whether directly forfeitable or substitute assets, and whether identified at this time or in the future, to satisfy the money judgment of $3,211, 599.83.

3. That the United States may sell or otherwise dispose of any forfeited property, including substitute assets, in accordance with law as required to satisfy the money judgment.

4. That pursuant to 21 U.S.C. § 881(e)(2)(A), the proceeds from any sale of forfeited property in this case shall be used to pay all property expenses of the proceedings for forfeiture and sale, includ-

ing expenses of seizure, maintenance of custody, advertising, and court costs.

5 That upon the entry of the POF, the United States Attorney is authorized to conduct proper discovery in identifying, locating, or disposing of the described property, or other substitute assets, pursuant to Rule 32.2(b)(3); and to commence proceedings that comply with statutes governing third party rights, if applicable, pursuant to 21 U.S.C. § 853(n)(6).

6. That the POF shall serve as a Writ of Entry and Inspection, authorizing the United States Marshals Service ("USMS"), and any other Government or non-Government personnel assisting the USMS, to enter onto and into the premises of the above-described real property as necessary for purposes of conducting inspections, appraisals, and video recording the property, to record and document the condition, value, and maintenance of the property until the forfeiture proceedings are concluded.

7. That occupants of the real property forfeited herein shall be served with a copy of the POF and provided with notice of the forfeiture of the property.

8. That the Government is not required to publish notice regarding the forfeiture money judgment against the Defendants; however, the POF shall be recorded in the records of the County Clerk's Office in the County of the debtor's residence, place of business, and any and all other counties in which the debtor has either real or personal property, as a lien thereon.

9. That the United States shall publish notice of the POF and its intent to dispose of the personal property in such manner as the Attorney General may direct, pursuant to 21 U.S.C. § 853(n)(1); and that the United States shall send notice of the POF to any person, other than the Defendants, who reasonably appears to be a potential claimant with standing to contest the forfeiture, pursuant to Rule 32.2(b)(6).

10. That upon entry of the POF, the USMS or its designee is authorized to seize the above-described forfeited property as directed by the United States Attorney's Office, and to commence proceedings that comply with legal provisions governing third-party rights under 21 U.S.C. § 853(n) and Rule 32.2(c).

11. That any person, other than the Defendants, asserting a legal interest in the forfeited property may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the Court for a hearing without a jury to adjudicate the validity of their alleged interest in the property, and for an amendment of the POF, pursuant to 21 U.S.C. § 853(n)(6) and Rule 32.2(c).

12. That pursuant to the requirements for ancillary petitions under 21 U.S.C. § 853(n)(3), any petition filed by a third party asserting an interest in the above-described forfeited property shall be signed by the petitioner under penalty of perjury, and shall set forth (1) the nature and extent of the petitioner's right, title, or interest in the particular property; (2) the time and circumstances of the petitioner's acquisition of the right, title, or interest in such property; (3) any additional facts supporting the petitioner's claim to an interest in such property; and (4) the relief sought.

13. That after the disposition of any motion filed under Rule 32.2(c)(1)(A) (providing for dismissal of ancillary petitions for lawful reasons), and before any ancillary hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure, pursuant to Rule 32.2(c)(1)(B), upon a showing that such discovery is necessary or desirable to resolve factual issues.

14. That the United States shall have clear title to the property following the court's determination of all third-party in-

terests, or, if no petitions are filed, following the expiration of the period provided in 21 U.S.C. § 853(n)(2) for the filing of third-party petitions.

15. That the Court shall retain jurisdiction to resolve disputes which may arise, and to enforce and amend the POF as necessary, pursuant to Rule 32.2(e).

16. That the Clerk of the United States District Court shall provide one (1) certified copy of this Order to the United States Attorney's Office.

**IT IS SO ORDERED.**